**Susie J. CALMES, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civil A. No. 3:92–CV–2263–X.**

United States District Court,
N.D. Texas,
Dallas Division.

May 21, 1996.

Tim Wheat, Dallas, Texas, for plaintiff.

Chip Shilling, IRS, Dallas, Texas, for defendant.

## MEMORANDUM OPINION AND ORDER

KENDALL, District Judge.

This case is before the Court on several issues of law, there being no factual disputes between the parties. Having considered the briefing, the arguments of counsel and the applicable law, the Court determines that Plaintiff's declaratory judgment action must be **DISMISSED with PREJUDICE**. Plaintiff's motion for a permanent injunction against the United States' wrongful levy will be **GRANTED**.

### Background

This is a tax suit arising from the United States' efforts to levy against plaintiff's husband's alleged community property interest in plaintiff's employment income. Jack Norton Calmes allegedly owes the United States $210,260.19 for tax deficiencies for the years 1984 through 1989.

On September 6, 1989, Plaintiff married Mr. Calmes. Just prior to the wedding ceremony, the couple executed a premarital agreement providing that their respective property would remain separate property after the marriage. The agreement also provided that employment income earned by either Mr. or Mrs. Calmes during their marriage would remain separate property. Specifically, the prenuptial agreement stated:

All personal service income earned by either Jack Calmes or Susan Bagwell during marriage shall be the separate property of Jack Calmes or Susan Bagwell, and all proceeds of, income earned from, and proceeds of, income earned from, and properties purchased with such separate income shall be the separate property of Jack Calmes or Susan Bagwell.

On October 14, 1992, the Internal Revenue Service served a notice of levy on Plaintiff's employer. The notice stated in pertinent part as follows:

By virtue of taxes assessed against Jack N. Calmes, it is intended that this levy will cover and attach to any funds due and owing to Susie J. Calmes, such funds being the community property of Jack N. Calmes and Susie J. Calmes. This levy attaches to Mr. Calmes' community property (50% of Mrs. Calmes' income).

The IRS agrees that Plaintiff does not owe them a penny; rather, it is her husband's debt, yet they seek to levy his alleged interest in her income.

## I. Declaratory Judgment Action

■ Plaintiff filed suit seeking an injunction and a declaratory judgment that the IRS is not entitled to levy against Plaintiff's personal income to satisfy the alleged deficiency owed by her husband. Specifically, her suit is one for wrongful levy arising under 26 U.S.C. § 7426 and for a declaratory judgment under 28 U.S.C. § 2201.

Plaintiff's action for declaratory judgment is immediately problematic. The operative statute states, in pertinent part, as follows:

In a case of actual controversy within its jurisdiction, except with respect to Federal taxes other than actions brought under section 7428 of the Internal Revenue Code of 1986 ... any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration....

28 U.S.C. § 2201(a). This case is clearly one "with respect to Federal taxes," and section 7428 addresses declaratory judgments concerning classification of tax-exempt organizations under 26 U.S.C. § 501(c)(3), an issue not present in the instant action. The Court wonders why anyone would bring a declaratory judgment action on facts such as those involved here. The question on this portion of plaintiff's suit becomes, not whether the declaratory judgment action is going away, but rather how it is going away.

Defendant complains that the Court does not have subject matter jurisdiction to entertain it, an assertion implicating Rule 12(b)(1), FED.R.CIV.P. The statute's language,

though, suggests that the problem is not jurisdictional, but instead should be properly addressed under Rule 12(b)(6), FED.R.CIV.P., which involves a failure to state a claim upon which relief can be granted. The phrase "in a case of actual controversy within its jurisdiction" in section 2201 suggests that that statute does not itself confer jurisdiction; indeed, it presupposes that a court's jurisdiction exists. One court faced with the same issue determined that one bringing a declaratory judgment action regarding a federal tax matter failed to state a claim on which relief could be granted. *Wells v. United States,* 746 F.Supp. 1024, 1028 (D.Hawaii 1990). However, language in a Fifth Circuit opinion might support the proposition that the matter is jurisdictional, *see McCarty v. United States,* 929 F.2d 1085, 1088 (5th Cir.1991) (dictum), and one court has interpreted that language so. *Smith v. Internal Revenue Service,* No. 90–4818, 1991 WL 236657 at *1 (E.D.La. Oct. 29, 1991). The better reasoning appears to lie with the *Wells* court's analysis, coupled with the statute's plain meaning, however the issue appears to be metaphysical because regardless of the answer, plaintiff's declaratory judgment action must be dismissed.

## II. Wrongful Levy Claim

The crux of this case contains a much different issue, one which the parties assert is of first impression, and it concerns the relation of Mr. and Mrs. Calmes' prenuptial agreement to Mr. Calmes' tax debt. Defendant presents two arguments in its effort to wrest Mrs. Calmes' employment income from her in payment of Mr. Calmes' premarital tax debt.

Initially, the United States asserts that the prenuptial agreement which the parties executed was ineffective in its attempt to characterize each party's personal service income as separate property. The Government's argument rests upon a strained interpretation of the phrase "shall be." As discussed further in this opinion, the United States' game of

semantics is meritless under current Texas law.

Alternatively, the defendant asserts that even if the prenuptial agreement effectively characterized the Calmes' future personal service income as separate property, the characterization is void as to the United States, as it was entered into in an effort to hinder, delay or defraud the defendant, a preexisting creditor.[1] In support of this argument, the United States relies upon the Texas Uniform Fraudulent Transfers Act (TUFTA) drawing an analogy between TUFTA's provisions and Article XVI's lack of intent to defraud requirement. Applying this analogy, the defendant attempts to show the Court seven so-called "badges of fraud" that brand the Calmes' prenuptial agreement as fraudulent. For the reasons discussed below, the United States' contention that the prenuptial agreement was a fraudulent transfer is also wholly without merit.

*A. Did the Prenuptial Agreement Effectively Characterize Each Party's Personal Service Income as Separate Property?*

■ Texas, due to its Mexican and Spanish law heritage, is a community property state. While the basic features of this system endure, over the years the details of Texas marital property law have been altered by constitutional amendments, legislative enactments and judicial decisions. *See* THOMAS M. FEATHERSTON, JR. and JULIE A. SPRINGER, *Marital Property Law in Texas: The Past, Present and Future,* 39 BAYLOR L.REV. 861, 862 (1987). In the past, neither married persons nor persons about to marry could by "mere agreement" convert the character of income or community property into separate property. *Winger v. Pianka,* 831 S.W.2d 853 (Tex.App.—Austin 1992, *writ denied*) (citations omitted). Subsequently, amendments to the Texas Constitution allowed spouses to partition then existing community property. TEXAS CONSTITUTION, art. XVI, § 15 (1948, amended 1980). Spouses are also allowed to agree that all or part of their community

---

1. The Texas Constitution, article XVI, § 15 (1987) specifically provides that premarital agreements must be entered into without the intention to defraud preexisting creditors. However, neither of the parties nor the Court has

been able to locate a Texas case, or any other case, which interprets the operative phrase, "without an intent to defraud preexisting creditors."

property becomes the property of the surviving spouse. TEXAS CONSTITUTION, art. XVI, § 15 (1987). Most importantly, the Texas Constitution has been amended to allow spouses and persons about to marry to partition or to exchange their interests in property then existing or to be acquired in the future. TEXAS CONSTITUTION, art. XVI, § 15 (1980, amended 1987). Article XVI provides, in pertinent part:

[P]rovided that persons about to marry and spouses, without the intention to defraud pre-existing creditors, may by written instrument from time to time partition between themselves all or part of their property, then existing or to be acquired, or exchange between themselves the community interest of one spouse or future spouse in any property for the community interest of the other spouse or future spouse in other community property then existing or to be acquired, whereupon the portion or interest set aside to each spouse shall be and constitute a part of the separate property and estate of such spouse or future spouse; spouses also may from time to time, by written instrument, agree between themselves that the income or property from all or part of the separate property then owned or which thereafter might be acquired by only one of them, shall be the separate property of that spouse.... *Id.*

Initially, some question remained as to whether the definition of "property to be *acquired*" effectively encompassed *future* personal earnings thereby making this type of personalty susceptible to premarital partition or exchange. However, recent judicial decisions and sections of the Texas Family Code [2] have made the fact that personal earnings are subject to partition or exchange abundantly clear.

In *Winger v. Pianka,* the Austin Court of Appeals was presented with the issue of whether the amendment to Article 16, § 15 allowed persons contemplating marriage to partition future earnings. 831 S.W.2d 853 (Tex.App.—Austin 1992, *writ denied*). In that opinion, after a thorough analysis of the amendment's text, the voters' intent and dis-

cussions concerning the amendment by the Texas Supreme Court, the Austin court held that the 1980 amendment to Article 16, § 15 of the Texas Constitution clearly permits persons about to marry to partition or to exchange between themselves salaries and earnings to be acquired by the parties during their future marriage. *Winger v. Pianka,* 831 S.W.2d 853, 858 (Tex.App.—Austin 1992, *writ denied* ).

Jack Calmes and Susan Bagwell Calmes executed their premarital agreement on September 6, 1989. Although the question of the applicability of the 1980 amendment was not clearly settled at the time of the agreement, Texas law has now established that parties contemplating marriage may partition their future earnings.

The defendant reluctantly concedes that in Texas, parties contemplating marriage may partition or exchange an interest in future earnings. However, the United States argues that in this case the attempted exchange was not effective and must be disallowed. The defendant bases its argument on the language of the clause purporting to exchange the future personal services income of the parties. The pertinent clause states, in part:

All personal service income earned by either Jack Calmes or Susan Bagwell during marriage *shall be* the separate property of Jack Calmes or Susan Bagwell, and all proceeds of, income earned from, and proceeds of, income earned from, and properties purchased with such separate income *shall be* the separate property of Jack Calmes or Susan Bagwell. (emphasis added).

The United States, through a strained interpretation of the phrase "shall be," attempts to argue that this phrase is insufficient to express a present intention to exchange the personal service income of each party. Instead, the defendant states that this phrase only expresses a future intention to partition future earnings. Under the United States' argument, since the Calmes' never executed an agreement which expressed a present intention to exchange their earnings, Mr.

---

2. *See* TEX.FAM.CODE § 5.41 (1995).

Calmes still possesses a half interest in the personal service income of Susan Bagwell Calmes and the United States is entitled to levy upon that property interest.

In order to ascertain whether Mr. Calmes has an interest or right to property which is subject to the IRS' attempts to levy on the property, the Court must look to state law. *See United States v. Rodgers*, 461 U.S. 677, 682, 103 S.Ct. 2132, 2136–37, 76 L.Ed.2d 236 (1983). If the Court determines that a property interest does exist under state law, then the consequences that attach to those interests is a matter of federal law. *Id.* The argument put forth by the United States has been considered and rejected by the Texas Court of Appeals. In *Dokmanovic v. Schwarz*, the Houston Court of Appeals considered a phrase strikingly similar to the one present in the Calmes' premarital agreement. 880 S.W.2d 272 (Tex.App.—Houston [14th Dist.], *no writ*).

In that case, the Houston Court of Appeals analyzed a 1987 premarital agreement to determine whether it effectively exchanged the personal service income of the parties. The agreement contained the following pertinent clauses:

> (d) Separate property increases, income, or proceeds ... *shall* remain the separate property of the owner of the separate property producing the increase, income, or proceeds.
>
> \*       \*       \*       \*       \*       \*
>
> (f) All income of the separate property of each party *shall be* treated as the separate property of the party owning the separate property producing the income. All earnings for personal services of each party *shall be* treated as the separate property of the party earning the income.... [T]he parties declare that any future income from personal earnings *shall be* partitioned and set aside regularly, each party's earning to that party.
>
> *Dokmanovic,* 880 S.W.2d at 273 (emphasis added).

The court analyzed Texas case law and found a willingness on the part of Texas courts to "validate the intent of the parties and to uphold premarital agreements against consti-

tutional challenges unless the language of the agreement forecloses that choice." *Id.* at 275. Like the parties in *Dokmanovic,* the Calmes' agreement indicated the parties' intent to exchange their community interests in income from separate property and in earnings. The use of the phrase "shall be" does not affect the clear intent of the parties to exchange their community interests.

The United States cites *Bradley v. Bradley* in support of its contention that the phrase "shall be" in the Calmes' agreement did not reflect a present intention to partition the future personal service income of the parties. In its discussion, the *Dokmanovic* court, analyzed and expressly rejected *Bradley's* applicability to premarital clauses similar to the one included in the Calmes' agreement.

In *Bradley v. Bradley,* 725 S.W.2d 503 (Tex.App.—Corpus Christi 1987, *no writ* ), the parties entered into a prenuptial agreement which provided that "on or before the 15th day of April of each year during the existence of this marriage, [the parties] will fairly and reasonably partition (and/or exchange) in writing all of the community estate of the parties on hand that will have accumulated since January 1 of the preceding year...." *Id.* at 504. The *Bradley* court found that this prenuptial agreement did not operate to partition and exchange the community property interests in the parties' income from personal efforts. *Id.* Instead, the court found that the agreement merely contemplated a partition and exchange of community property interests in the future. *Id.*

The agreement in *Bradley* is clearly distinguishable from the Calmes/Bagwell prenuptial agreement. The only statement regarding recharacterization of community property to separate property in *Bradley* clearly contemplates future action to accomplish the recharacterization. In this case, the agreement has language that requires no future action to accomplish the exchange of the parties' property. The Calmes do not have to get together on the 15th of April every year and divvy up all the community property and/or income acquired in the previous year. The clause in question and the

Calmes' agreement as a whole clearly evince a present intention to exchange the future service income of the parties. Accordingly, the Court holds that the prenuptial agreement in this case was valid as an exchange of income to be acquired by the parties during their future marriage. Furthermore, no partition was required where a valid exchange occurred. This Court will follow Texas law and validate the clear intent of the parties. The defendant will not be allowed to attack a valid premarital agreement on the strength of a strained interpretation of a single phrase in a multi-page document.

*B. Was the premarital agreement executed with the intent to defraud a preexisting creditor?*

■ The United States next argues that the prenuptial agreement is void as to the defendant, because the parties entered into the agreement in an attempt to hinder, delay or defraud the United States. The Texas Constitution provides:

> that persons about to marry and spouses, *without the intention to defraud pre-existing creditors,* may by written instrument from time to time partition between themselves all or part of their property, then existing or to be acquired, or exchange between themselves the community interest of one spouse or future spouse in any property for the community interest of the other spouse or future spouse in other community property then existing or to be acquired....

TEXAS CONSTITUTION, art. XVI, § 15 (1987).

At the present time, there exists no standard which defines what is required in order to show an intent to defraud a preexisting creditor under a premarital agreement. In order to craft some applicable standards, the Court agrees with the defendant that the most analogous set of rules is that set out in TUFTA. TUFTA applies to fraudulent conveyances. Here, as the defendant asserts, the premarital agreement effectively conveys and intended to convey interests in property and income. However, the Court disagrees with the defendant's assertion that the prenuptial agreement is clearly fraudulent. After an analysis of TUFTA, its applicable provisions and the "badges of fraud" presented by the defendant, the Court is of the opinion that the prenuptial agreement was not fraudulent and was entered into without an intent to defraud a preexisting creditor.

Section 24.005(a)(1) provides that a transfer of property is fraudulent if the transaction was actually entered into with an intent to hinder, delay or defraud any creditor of the debtor.[3] Direct proof of actual intent is an impossibility; no one can crawl inside another's mind in order to determine what that person was thinking at a particular point in time. Consequently, the Court must look to a number of circumstantial factors in order to determine the likely intent of the parties.[4] These circumstantial factors or the

3. § 24.005 Transfers Fraudulent as to Present and Future Creditors
   (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or within a reasonable time after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
   (1) with actual intent to hinder, delay, or defraud any creditor of the debtor; TEX.BUS. & COM.CODE § 24.005(a)(1) (1995).

4. § 24.005. Transfers Fraudulent as to Present and Future Creditors
   (b) In determining actual intent under Subsection (a)(1) of this section, consideration may be given, among other factors, to whether:
   (1) the transfer or obligation was to an insider;
   (2) the debtor retained possession or control of the property transferred after the transfer;
   (3) the transfer or obligation was concealed;

(4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
(5) the transfer was of substantially all the debtor's assets;
(6) the debtor absconded;
(7) the debtor removed or concealed assets;
(8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
(9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
(10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and
(11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor. TEX BUS. & COM.CODE § 24.005(b)(1)–(11) (1995).

"badges of fraud" are the foundation of sand upon which the defendant builds its fraudulent intent argument. The Court will discuss each of the defendant's points in turn and then discuss some of the intangible factors which counsel against a finding of fraudulent intent on the part of the Calmes.

The United States first asserts that Susan Bagwell Calmes was, at the time of the agreement, and is now an insider. TUFTA defines an insider as "a relative of the debtor or of a general partner of the debtor[5]." A relative is defined as "an individual related by consanguinity within the third degree as determined by the common law, a spouse, or an individual related to a spouse within the third degree as so determined, and includes an individual in an adoptive relationship within the third degree[6]." The TUFTA definition of an insider is not intended to limit an insider to the four listed subjects. *See Browning Interests v. Allison,* 955 F.2d 1008 (5th Cir.1992). In the Fifth Circuit, the test for determining whether a individual is an insider depends upon two factors: (1) the closeness of the relationship between the debtor and the transferee; and (2) whether the transaction between the transferee and the debtor was at arm's length. *Id.* at 1010. The determination of insider status is normally a mixed question of fact and law. *Id.* at 1011.

The relationship between Susan Bagwell Calmes and Jack Calmes was clearly a close one, as shown by their intent to marry. The question of whether the premarital agreement was an arms-length transaction also counsels toward a finding of insider status. The relationship of the parties was such that each could have influenced the other in financial decisions.

Accordingly, although at the time of the agreement, Susan Bagwell Calmes did not come within the strict definition of an insider, the Court finds that Ms. Calmes is an individual covered by the spirit of the meaning of "insider." *See id.* (holding that debtor's ex-wife was an insider for purposes of UFTA). However, simply transferring an interest to an insider will not establish an intent to defraud.

The defendant next asserts that by virtue of the fact that the Calmes' live together as man and wife and Mrs. Calmes pays the expenses incurred in relation to the house and other necessities of life, that Mr. Calmes' has retained possession or control of his interest in the personal income of Mrs. Calmes. Beyond the assertion that Mrs. Calmes pays the bills, the defendant adduces no evidence that Mr. Calmes' has possession or control over half of Mrs. Calmes' income. There is no proof that Jack Calmes is a signatory on Mrs. Calmes' checking account(s) or savings account(s). There is no evidence that Mr. Calmes' confiscates his wife's check every payday, cashes it and spends it as he will. The Court notes that the house in which the couple resides is Susan Calmes' separate property. Mrs. Calmes is responsible for the mortgage, upkeep, insurance and utilities associated with that structure whether Mr. Calmes' is living in the house or not. Beyond these factual considerations, under Texas law, the personal income of one party to the marriage is characterized as sole management community property, absent a recharacterization of it to separate property[7]. Since Mr. Calmes is not entitled to possession or control of his community one-half interest in the personal earnings of Susan Calmes even without a premarital agreement, the Court fails to see how Mr. Calmes can retain possession or control over property which Texas law specifically characterizes as under Mrs. Calmes' sole management,

---

**5.** (7) "Insider" includes:
  (A) if the debtor is an individual:
    (i) a relative of the debtor or of a general partner of the debtor;
    TEX.BUS. & COM.CODE § 24.002(7)(A)(i) (1995.)

**6.** TEX.BUS. & COM.CODE § 24.002(11) (1995).

**7.** § 5.22 Community Property; General Rules
  (a) During marriage, each spouse has the sole management, control, and disposition of the

community property that he or she would have owned if single, including but not limited to:
    (1) personal earnings;
    (2) revenues from separate property;
    (3) recoveries for personal injuries; and
    (4) the increase and mutations of, and the revenue from, all property subject to his or her sole management, control and disposition.
    TEX FAM.CODE § 5.22 (1995).

control and disposition. The Court finds that Mr. Calmes does not retain control or possession over the interest he exchanged.

Another badge of fraud which the defendant asserts is present in this case is the fact that Jack Calmes was threatened with suit by the IRS. The Court finds that this factor is present. The defendant has submitted affidavits which state that the IRS was taking collection action against Mr. Calmes. The Calmes' agreement, by its terms recognized Mr. Calmes' preexisting tax liabilities. Additionally, the agreement recognized Mr. Calmes' intent to declare bankruptcy. According to the defendant, Mr. Calmes' insolvent state is another "badge of fraud." These factors may certainly be considered by the Court, but their presence or absence will not necessitate a finding or rejection of the Calmes' intent to defraud.

Defendant asserts that Mr. Calmes did not receive a reasonably equivalent value in exchange for the transfer of his interest in Mrs. Calmes' wages. The Court simply cannot agree with this assertion. The Court only wishes that it had the ability to foresee the future as the IRS does, for in this one bald assertion, the defendant has relegated Mr. Calmes to a life as a wastrel and an unemployed debtor. The Court refuses to subscribe to the doom and gloom prophecy of the defendant. Simply because Mr. Calmes is bankrupt or unemployed now, does not mean that he is confined to that sorry lot for life. Yet, Susan Calmes has relinquished her rights to his future earnings for the duration of the marriage.

The parties gave up equally valuable rights. The defendant makes much of the history of events showing that Mrs. Calmes has a great earning potential and Mr. Calmes has not. However, on the day the agreement was signed, neither party knew of the other's future earning potential. Presumably, they took each other for richer or poorer, for better or worse. Mrs. Calmes could have lost her job a day after the honeymoon and Mr. Calmes could have won the lottery.[8] Either way the premarital agreement would have foreclosed the possibility of one party asserting an interest in the other's separate property. In addition, the Calmes' relinquished their respective rights in the other's real property, proceeds from separate property, income from investments, life insurance, etc. The Court finds that clearly each party received a reasonably equivalent value in exchange for the interests relinquished.

Neither can the Court agree with the suggestion that Mr. Calmes' exchange of his community interest in Mrs. Calmes' personal earnings was his sole and only asset. The defendant asserts that by agreeing that Susan Calmes' income would be her separate property, Jack Calmes transferred substantially all of his assets. The agreement specifically refers to the substantial estate that Jack Calmes had accumulated prior to the marriage. These assets included a house and its contents, among other items. Additionally, due to the premarital agreement, Jack Calmes never acquired any interest in Susan Calmes' personal income. The Court fails to see how an interest which was never acquired can be considered an asset of the debtor. Susan Calmes could have refused to marry Jack Calmes without the premarital agreement and as a result his alleged asset in Susan's income would never have been created. The premarital agreement did not result in a transfer of substantially all of Jack Calmes' assets.

Finally, the United States asserts that the final badge of fraud exists in the fact that the premarital agreement and its transfers occurred shortly after a substantial debt was incurred. This is simply not the law. Jack Calmes allegedly owes taxes for the years 1984–1989. The debt to the IRS was incurred when Jack Calmes did not pay the owed taxes in 1984 and in each succeeding year after that. *See Roland v. United States,* 838 F.2d 1400, 1403 (5th Cir.1988). Taxes become due and payable on April 15th of the year immediately following the preceding year. The Court notes with interest that during some of the years the tax liability was incurred, Mr. Calmes was married to another woman. Mr. Calmes' tax debt was not incurred when a deficiency was assessed and

---

**8.** Presumably, had he done so we would not be here today. For instead of pursuing an innocent spouse, the IRS could pursue the true debtor for its money.

noticed against him, it was incurred when he failed to pay the taxes in the first place. However, the defendant cannot show that Jack Calmes began divesting himself of all his interest in property beginning in 1984 and continuing into the present. Instead, the defendant points to a negotiated agreement entered into between two consenting adults reflecting an interest to marry not for the property rights that are attached to that institution in the state of Texas, but for companionship, love and respect. The agreement clearly reflects the parties' interest to remove money matters as a possible bone of contention during the marriage. It is a simple statement of "what's mine is mine and what's yours is yours," not as the IRS asserts a devious, evil scheme to deprive the IRS of its ability to swoop down and take half of Susan Calmes', an individual who the IRS acknowledges owes nothing, hard-earned money.

Beyond these supposed badges of fraud allegedly present, the defendant asserts that the Calmes entered this agreement with the full knowledge that the IRS was entitled to levy on Susan Calmes' sole management community property. The defendant bases this assertion on the existence of a Fifth Circuit case.

In *Medaris v. United States*, 884 F.2d 832 (5th Cir.1989), the Court of Appeals held that Texas' exemption of a spouse's sole management community property from preexisting creditors did not act to prevent the IRS from levying on the taxpayer's interest in those funds. The Defendant asserts that the existence of this case is proof of the Calmes' actual intent to defraud. This assertion is absurd. The *Medaris* case was decided on October 2, 1989, nearly a month *after* the Calmes signed the premarital agreement and married. Absent a showing of clairvoyance, the Court will not infer an evil intent on the part of persons entering an ordinary premarital agreement based upon case precedent which was not in existence at the time.

### III.  Injunctive Relief

■ Unlike a preliminary injunction, which is intended to preserve the status quo pending resolution of the issues, normally a permanent or final injunction is to be grant-

ed only after a right thereto has been established at a full trial on the merits. *University of Texas v. Camenisch*, 451 U.S. 390, 396, 101 S.Ct. 1830, 1834, 68 L.Ed.2d 175 (1981); *Shanks v. City of Dallas*, 752 F.2d 1092 (5th Cir.1985); 11 CHARLES A. WRIGHT & ARTHUR R. MILLER, MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE, § 2941 (1973). Permanent injunctive relief is proper when the plaintiff will suffer irreparable harm and there does not exist an adequate remedy at law. *Weinberger v. Romero–Barcelo*, 456 U.S. 305, 312, 102 S.Ct. 1798, 1803, 72 L.Ed.2d 91 (1982). However, the court may grant a permanent injunction without a trial on the merits if there are no material issues of fact and the issues of law have been correctly resolved. *Clark v. Cohen*, 613 F.Supp. 684, 690 (E.D.Pa.1985) *aff'd* 794 F.2d 79 (1986), (*citing Standard Oil Co. v. Lopeno Gas Co.*, 240 F.2d 504, 509–10 (5th Cir.1957)). The parties have stipulated that no issues of material fact are in dispute between the parties which require any additional hearing or trial.

■ The standard for a permanent injunction is "essentially the same" as for a preliminary injunction, in that the plaintiff must show the existence of a substantial threat of irreparable harm, that outweighs any harm the relief would accord to the defendants, that there is no adequate remedy at law, and that granting the injunction will not disserve the public interest. *United States v. The Rainbow Family*, 695 F.Supp. 314 (E.D.Tex.1988) (*citing Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 506–07, 79 S.Ct. 948, 954–55, 3 L.Ed.2d 988 (1959); *Mississippi Power & Light v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir.1985); *Tubwell v. Griffith*, 742 F.2d 250, 251 (5th Cir.1984)); *see also Roho, Inc. v. Marquis*, 902 F.2d 356, 358 (5th Cir.1990); *Allied Mktg. Group, Inc. v. CDL Mktg., Inc.*, 878 F.2d 806, 809 (5th Cir.1989). All four of these elements are mixed questions of law and fact. *Blue Bell Bio–Medical v. Cin-Bad, Inc.*, 864 F.2d 1253, 1256 (5th Cir.1989). To justify a permanent injunction, however, the plaintiff must demonstrate actual success on the merits, rather than a likelihood of success. *Amoco Production Co. v. Village of*

*Gambell, Alaska,* 480 U.S. 531, 546 n. 12, 107 S.Ct. 1396, 1404 n. 12, 94 L.Ed.2d 542 (1987). It is within the court's sound discretion to decide whether to exercise equity jurisdiction and grant permanent injunctive relief. *Lemon v. Kurtzman,* 411 U.S. 192, 200–01, 93 S.Ct. 1463, 1469–70, 36 L.Ed.2d 151 (1973). "Injunctive relief is an extraordinary and drastic remedy, not to be granted routinely, but only when the movant, by a clear showing, carries the burden of persuasion." *Holland America Insurance Co. v. Succession of Roy,* 777 F.2d 992, 997 (5th Cir.1985). Speculative injury is not sufficient, for "there must be more than a mere possibility or fear that the injury will occur." *Connecticut v. Massachusetts,* 282 U.S. 660, 674, 51 S.Ct. 286, 291, 75 L.Ed. 602 (1931); *Holland,* 777 F.2d at 997. If warranted, permanent injunctive relief is a "flexible" remedy, "to be molded to the necessities of a particular case." *Rondeau v. Mosinee Paper Corp.,* 422 U.S. 49, 62, 95 S.Ct. 2069, 2077–78, 45 L.Ed.2d 12 (1975); *Hecht Co. v. Bowles,* 321 U.S. 321, 329, 64 S.Ct. 587, 591–92, 88 L.Ed. 754 (1944). A district court's determination of injunctive relief will be reversed only if the court abuses its discretion. *United States v. Marine Shale Processors,* 81 F.3d 1329 (5th Cir.1996); *Peaches Entertainment Corp. v. Entertainment Repertoire Assoc.,* 62 F.3d 690, 693 (5th Cir.1995); *Blue Bell Bio–Medical,* 864 F.2d at 1256. In the abuse of discretion analysis, the court's fact findings will be overturned only if clearly erroneous. *Peaches Entertainment Corp. v. Entertainment Repertoire Assoc.,* 62 F.3d 690, 693 (5th Cir. 1995); *Blue Bell Bio–Medical,* 864 F.2d at 1256; *Apple Barrel Prod., Inc. v. Beard,* 730 F.2d 384, 386 (5th Cir.1984).

■ For the reasons discussed in the preceding sections, the Court finds that Calmes has succeeded on the merits of her wrongful levy claim. The premarital agreement effectively exchanged the community interests in the personal service income between the parties. Therefore, under Texas law, Jack N. Calmes never had, and does not now have, a community property interest in half of Susan Calmes personal service income. Additionally, the premarital agreement was not a fraudulent transfer which the

United States may set aside by virtue of its status as a preexisting creditor.

Calmes has shown that irreparable harm would result if the United States were allowed to levy on her personal service income. The factors to be considered by the Court on an issue of injunctive relief are not isolated criteria, but discrete parts of a single continuum. The degree of harm necessary decreases when the plaintiff demonstrates success on the merits. Susan Calmes has substantial separate real property assets for which she is responsible. Susan Calmes is also responsible for books, tuition, and living expenses which her daughter incurs while she is enrolled in college. Allowing the United States to levy upon property to which it has no right would deprive Susan Calmes and her daughter of certain necessities of life and severely impinge upon her ability to meet her obligations as they come due.

Any harm to the United States resulting from the injunction against a levy on Calmes' separate property is minimal. The IRS may continue to pursue Mr. Calmes. Simply because he is bankrupt and unemployed now, does not mean that he will always be so. The IRS is an institution whose sheer mass and momentum will allow it to exert an ever-present force in Jack N. Calmes' life. The Court is confident that the IRS can and will outlast Mr. Calmes. Additionally, since Mr. Calmes was married to another woman during the time period that some of the tax liability was incurred, the IRS is free to pursue that former spouse to recoup some of the community tax liability.

Finally, the public policy concerns rest solely on the side of granting the injunction. In a time in history where our leaders lace their rhetoric with homages to the family and the value of marriage, the fact that the government would engage in this type of full frontal assault on the institution of marriage is particularly offensive. Counsel for the IRS freely admits that if the Calmes had chosen to live together instead of exchanging vows before their families and God, the IRS could attach none of Susan Calmes' income, regardless of whether she paid every single penny of any living expenses incurred by

Jack Calmes. However, because the couple did not choose to "shack up" and "live in sin" Susan Calmes has been harried and harassed by an agency often criticized for its excesses and overreaching.

The Court believes that this is a classic example of the right hand not knowing (or caring) what the left hand is doing. The President and Congress extol the virtues of marriage and the family, debate per-child tax credits and laud the demise of the marriage-penalty present in the tax code, while the agency itself attempts to have its Texas community property cake and eat it too. The IRS cannot pick and choose among the tenets of community property law. Texas community property law creates a joint community estate which the IRS can reach for tax liabilities; however, the same law allows a couple to keep their estates separate and enjoy the convenience of separate property by simply executing a valid premarital agreement.

The social and cultural forces of our time already place a great strain on the stability of the family and the institution of marriage. The IRS, with the force, resources and staying power of the federal government, does not need to join the fray.

### Conclusion

The permanent injunction shall issue. The Internal Revenue Service, its agents and employees **ARE ENJOINED** from executing or placing any levy upon the personal service income of Susan Bagwell Calmes. The defendant is **FURTHER ENJOINED** from attempting to levy on any other property which is the separate property of the plaintiff.

The plaintiff's declaratory judgment action is **DISMISSED with PREJUDICE.**

Costs of Court shall be borne by the defendant.

The Clerk of the Court is **ORDERED** to close this case and to provide all parties with notice of its closure.

**SO ORDERED.**