Marty V. WYNNE, Plaintiff,

v.

UNITED STATES of America, Defendant.

No. CIV.A.3:03–CV–0550BH.

United States District Court, N.D. Texas, Dallas Division.

Jan. 29, 2004.

Marty V. Wynne, Dallas, TX, Pro Se.

Michelle C. Johns, US Department of Justice, Tax Division, Dallas, TX, for Defendant.

### MEMORANDUM OPINION & ORDER

RAMIREZ, United States Magistrate Judge.

Pursuant to the consent of the parties and the District Court's Order of Reassignment, dated and filed July 31, 2003, this matter was transferred to the undersigned United States Magistrate Judge for the conduct of all further proceedings and the entry of judgment in accordance with 28 U.S.C. § 636(c). Before the Court are *United States' Motion for Summary Judgment,* filed September 2, 2003; *Plaintiff's Response* [1] *to United States' Motion for Summary Judgment,* filed September 24, 2003; and *United States' Reply to Plaintiff's Response to United States' Motion for Summary Judgment,* filed September 29, 2003. Having reviewed the pleadings and the evidence submitted therewith, the Court finds that *United States' Motion for Summary Judgment* should be **GRANTED** and this case should be **DISMISSED** with prejudice.

### I. BACKGROUND

On March 13, 2003, Marty V. Wynne ("Wynne") filed this suit against the United States of America ("United States") for the recovery of $4,975.00 in federal income taxes paid in 1994 by her and her then-husband James Murphy ("Murphy"). Wynne, a financial consultant, and Murphy, an anesthesiologist, were married in 1994 and filed their 1994 federal income return as married filing jointly. (U.S.App. at 11; Pl.App. at 1.) They reported $ 279,-717.00 in taxable income and owed $ 84,-

747.00 in tax liability. *See id.* Because Wynne and Murphy had paid $ 89,810.00 in estimated tax payments, they were refunded $ 5,063.00. (Compl. at 4.) The Internal Revenue Service ("IRS") reduced the refund by $ 1,679.50 in November 1995 to pay for outstanding tax liabilities for the 1993 tax year. *See id.*

Wynne filed for divorce from Murphy on August 31, 1996. (Compl. at 4.) Wynne and Murphy were still married in 1997, and they filed their 1997 federal tax returns as married filing separately. Wynne's separate 1997 return claimed taxable income of $ 14,536.00 and a net operating loss from her financial consulting business of $ 19,831.00. (U.S.App. at 13–17.) The record reflects that Wynne did not pay federal income taxes nor receive a refund for the 1997 tax year.

On August 22, 1997, Murphy filed for bankruptcy. *Id.* at 3. On September 25, 1997, the IRS filed a Proof of Claim in Murphy's bankruptcy proceedings for $ 12,407.93 in outstanding tax liabilities for the 1993, 1995, and 1996 tax years. (Compl.Att.7.) The IRS twice amended its Proof of Claim, resulting in Murphy allegedly owing $ 27,920.95 in past-due taxes. (Compl.Att.9.)

The bankruptcy court entered an Agreed Final Judgment on August 3, 1998. Therein, Wynne and Murphy divided their marital estate, and Murphy agreed to be solely responsible to the IRS "in the approximate amount of $ 724.00." (Compl. Att. 7 at 10.) Also in the Agreed Final Judgment, the bankruptcy court "denied all relief not granted;" the record does not reflect further satisfaction of the IRS's Proof of Claim. Wynne and Murphy's divorce was final on October 7, 1998.

---

[1]. Although Wynne states that her response is also a "Motion to Dismiss," no part of the response discusses dismissal. The Court construes the pleading as a response to the United States' summary judgment motion only, not as a separate motion to voluntarily dismiss her own case.

On July 24, 2000, Wynne and Murphy filed an amended 1994 joint tax return and an application for a tentative refund in order to carry back Wynne's 1997 net operating loss to the 1994 tax year and increase their 1994 refund. (U.S.App. at 3–9.) According to Wynne, sometime in August 2000, she telephoned the IRS's call center in Austin, Texas, and was told that half of the additional 1994 refund would be applied to Murphy's outstanding tax liabilities. (Compl. at 9; Pl.App. at 3.) Wynne then filed an Injured Spouse Claim and Allocation Form 8379 on September 11, 2000, on grounds that the additional 1994 refund was hers alone and that it was being improperly applied to Murphy's tax liabilities. (Compl.Att.11.) She also requested that the IRS send her additional information that she allegedly needed in order to complete the claim. *See id.*

On November 30, 2000, the IRS processed Wynne and Murphy's amended joint return, granted them a carryback refund based on the net operating loss, and increased their 1994 refund to $ 9,951.96, interest included. (Mot. at 2.) The IRS credited Wynne with half of this refund and on December 4, 2000, sent Wynne a check for $ 4,975.98. (U.S.App. at 20; Pl.App. at 4.) Wynne endorsed the check, returned it, and requested that it be applied as an estimated tax payment for the 2000 tax year. *See id.* On March 9, 2001, the IRS disallowed Wynne's Injured Spouse claim without sending her the requested information and did not apply her half of the refund as an estimated payment, but resent her the check for $ 4,975.98. (Pl.App. at 3–4.) Again Wynne returned the check and requested that it be applied as an estimated tax payment for the 2000 tax year. (Pl.App. at 4.)

Wynne ultimately received $ 4,975.98, exactly half of the carryback refund. (Compl.Att.13.) She filed this suit for the recovery of the other half, which she claims the IRS improperly allocated to Murphy and used to pay for his separate tax liabilities. (Compl. at 1–12, Att. 13–15.) Specifically, Wynne alleges that the IRS used $ 4,043.00 of the carryback refund to pay for Murphy's separate tax liabilities incurred in 1993, 1995, and 1996. (Compl. at 12.)

By the instant motion, the United States moves for summary judgment on grounds that Wynne's net operating loss arose as community property because it was generated during her marriage to Murphy. Moreover, the United States argues that the refund that resulted from carrying back that loss arose from Wynne and Murphy's joint tax return, which they filed while married. (Mot. at 4–7.) Thus, the United States argues, the carryback refund was community property. *See id.* The United States argues that the IRS was allowed to use Murphy's half of that community property to pay his outstanding tax liabilities. *See id.* Wynne responds that any tax credit generated by her business's net operating loss was her separate property and remained her separate property even though it arose while she was married and resulted in a refund from her joint 1994 return filed while married. (Resp. at 1–2.) Wynne also contends that the IRS improperly disallowed her Injured Spouse claim because the IRS failed to provide her with information she needed to make the claim. *See id.* at 2, 5, and 8–9. Wynne argues that the IRS should not have applied the other half of the refund to Murphy's unpaid taxes because Wynne did not have notice that Murphy was not paying taxes. *See id.* Finally, Wynne complains that the IRS recovered all taxes due from Murphy's bankruptcy estate, and thus achieved double satisfaction. *See id.* at 3–4, 6, and 9.

## II.  ANALYSIS

### A.  Summary Judgment Standard

■ This case involves issues of law and issues of fact. "Summary judgment is an appropriate mechanism for resolving issues of law arising from a materially complete factual record." *Burlington Northern and Santa Fe Ry. Co. v. Brotherhood of Maintenance of Way Employees,* 93 F.Supp.2d 751, 756 (N.D.Tex.2000). "Furthermore, disputes over the legal inferences to be gleaned from the facts in evidence will not prevent summary judgment; thus, where a non-movant merely debates the consequences flowing from admitted facts, summary judgment is proper." *Id.* "Interpretations of statutory provisions that are dispositive and which raise only questions of law, there being no contest as to the operative facts, are appropriate for summary judgment." *United States v. Miller,* 2003 WL 23109906, at *3 (N.D.Tex. Dec.22, 2003).

■ With regard to factual issues, summary judgment is appropriate when the pleadings and record evidence show that no genuine issue of material facts exists and that the movant is entitled to judgment as a matter of law. *See Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994). "[T]he substantive law will identify which facts are material[,]" and only genuine disputes about material facts will preclude summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If the non-movant bears the burden of proof at trial, the movant may satisfy its burden by showing that there is an absence of evidence to support the non-movant's case. *Latimer v. Smithkline & French Lab.,* 919 F.2d 301, 303 (5th Cir. 1990). Once the movant makes this showing, the burden shifts to the non-movant to show that summary judgment is inappropriate. *Little,* 37 F.3d at 1075. Further, the court must view all of the evidence in the light most favorable to the non-movant. *See Richter v. Merchants Fast Motor Lines, Inc.,* 83 F.3d 96, 98 (5th Cir.1996). "On a motion for summary judgment in a case such as this one, where the Court would act as the ultimate trier of fact, the Court is permitted to draw inferences from the evidence so long as the inferences do not involve issues of witness credibility or disputed material facts." *United States v. Real Property Known as 1700 Duncanville Road,* 90 F.Supp.2d 737, 740 (N.D.Tex.2000).

### B.  Applicable Law

Wynne's entitlement to the entire carryback refund depends on how the tax code treats a net operating loss and the ownership of any resulting refund. *See Ragan v. Comm'r of Internal Revenue,* 135 F.3d 329, 333 (5th Cir.1998). Determining Wynne's entitlement requires interpreting federal and state law which, there being no genuine dispute about the applicable facts, is appropriate for summary judgment. *See Miller,* 2003 WL 23109906, at *3.

■ The tax code defines a "net operating loss" as the excess of a taxpayer's deductions over gross income. *See* 26 U.S.C. § 172(c). The tax code allows a taxpayer to "carryback" a net operating loss to an earlier year and use the loss to decrease the taxpayer's taxable income for that applicable year. *See id.* at § 172(a) and (b). If the carryback decreases the taxpayer's taxable income such that there is an overpayment of taxes, the IRS "may credit the amount of such overpayment . . . against any liability in respect of an internal revenue tax on the part of the ***person who made the overpayment*** and shall . . . refund any balance to ***such person.***" *Id.* at § 6402(a) (emphasis added). The credit of an overpayment of a net operating loss that had been carried back to a previous year is referred to as a

"carryback refund," and is provided only to "the person who made the overpayment[.]" *Id.*

■ The Court looks to state law to determine who made the overpayment and, thus, who should receive the carryback refund. *See Ragan,* 135 F.3d at 333 (referring to Texas community property law). Neither party disputes that Texas law applies, and Wynne was a resident of Texas in 1994 and 1997. Accordingly, as in *Ragan,* the Court applies Texas law. *See id.* (citing *Vinson & Elkins v. C.I.R.,* 7 F.3d 1235, 1237 (5th Cir.1993)). The amount of refund that Wynne is entitled to depends on the allocation of the carryback refund under Texas's community property regime. *See id.*

### 1. Texas's Community Property Regime

■ Under federal tax law and Texas's community property regime, "[w]hen a husband and wife file a joint return, each has a separate interest in the jointly reported income and in any overpayment." *Ragan,* 135 F.3d at 333 (citing Rev. Rul. 74–611, 1974–2 C.B. 399, 1974 WL 34502, and Rev. Rul. 80–7, 1980–1 C.B. 296, 1980 WL 129579) (discussing the marital interests in a joint return in context of Texas community property law). "Filing jointly does not give one spouse an interest in the income of the other." *Id.* Indeed, "the case law overwhelmingly establishes that overpayments by married couples are apportionable to each spouse to the extent that he or she contributed to the overpaid amount." *Id.; see also In re Bathrick,* 1 B.R. 428, 430 (Bankr.S.D.Tex.1979) ("The source of an overpayment of income tax determines the character of the refund, with a refund of excess withholding tax merely being a repayment of earnings from employment") (superseded by statute on other grounds as stated in *Thomas v. Burke (In re Burke),* 150 B.R. 660, 662–63

(Bankr.E.D.Tex.1993)). Rather, "to the extent that the income is attributable to one spouse's sole management community property, *the refund from the excess tax on that income is the sole management community property of that spouse.*" *Ragan,* 135 F.3d at 333 (emphasis added). "[U]nder Texas law, the personal income of one party to the marriage is characterized as sole management community property, absent a recharacterization of it to separate property." *Calmes v. United States,* 926 F.Supp. 582, 589 (N.D.Tex. 1996). Thus, the refund of excess taxes paid on personal earnings would be the sole management community property of the spouse that paid the excess taxes. *See id.*

Murphy and Wynne filed a joint return which resulted in an overpayment for the 1994 tax year, and they filed an amended joint return which resulted in an additional refund for the 1994 tax year. Each spouse's separate interest in the refund depends on the amount of excess tax that he or she paid on the income derived from each spouse's sole management community property. *See Ragan,* 135 F.3d at 333. Thus, the amount of Wynne's separate interest depends on the amount of excess 1994 taxes that she paid on her *sole management community property. See id.*

### 2. Amount of Wynne's 1994 Taxes

Wynne and Murphy's joint tax payments for 1994 were $89,810.00. (Compl. Att.3 at 3.) Wynne asserts that she paid $ 28,-815.00 in taxes in 1994. The amount of taxes paid by Wynne in 1994 is a question of fact. *See Little,* 37 F.3d at 1075. Wynne does not identify evidence in the record showing that she paid $ 28,815.00 in taxes, nor that such taxes were paid on income derived from her sole management community property. As the party opposing summary judgment, Wynne is required

to identify specific evidence in the record and to articulate the precise manner in which the evidence supports her claim. *See Ragas v. Tennessee Gas Pipeline Co.,* 136 F.3d 455, 458 (5th Cir.1998). She may not rely on unsupported assertions as competent summary judgment evidence. *See id.* The Court has no duty to search the record for such supporting evidence. *See id.*

■ Although the Court has no duty to search the record, the Court has found that the couple's 1994 joint return contains Wynne's 1994 W–2, which reflects that the IRS withheld $6,828.21 in federal income taxes on income that she earned from her employment. (Compl. Att.3 at 2.) As stated above, "the personal income of one party to the marriage is characterized as sole management community property, absent a recharacterization of it to separate property." *Calmes,* 926 F.Supp. at 589. The record does not reflect a recharacterization of the income on Wynne's W–2 as separate property. Thus, her personal income and the $ 6,828.21 taxes paid on that income is her sole management community property. *See id.* However, the Court has no way of determining how much of the $ 6,828.21 was refunded to Wynne and Murphy. Further, Wynne and Murphy's thirty-nine-page 1994 joint tax return does not attribute any other specific amount of income to Wynne, nor reflect income derived from her sole management community property. Indeed, the return indicates that Wynne and Murphy had multiple sources of income, Murphy employed Wynne, Wynne had her own businesses, and they held numerous investments, each source responsible for a portion of the couple's income, losses, and initial refund.

When the Court is unable to apportion the income or the taxes paid, the Court may allocate a carryback refund equally. *See Hathaway v. United States,* 1993 WL 207532, at *3 (W.D.Wash. March 16, 1993) (concluding that the ex-wife was entitled to half of the carry-forward from joint return that was filed while still married and finding that the IRS improperly awarded most of the refund to the ex-husband). In *Hathaway,* the plaintiff filed suit in federal court in Washington, another community property state, to recover a refund arising from excess federal taxes paid by her and her former husband. *See id.* at *2. While married, the couple filed a joint return resulting in a refund. Rather than choose to immediately receive the refund, the couple arranged for the refund to be carried forward and applied to future tax liabilities. After divorce, the plaintiff sought to obtain the entire refund for her herself, but the IRS applied the refund almost exclusively to the former husband's tax liabilities. *See id.* On cross motions for summary judgment, the court determined that the former couple's "income for that year was derived from numerous sources, and that the couple's tax liability is not readily apportionable to each spouse." *Id.* at *3. Unable to apportion the refund accordingly, the court determined that the plaintiff was entitled to half of the refund. *See id.* Therefore, the court granted the plaintiff's motion for summary judgment and awarded her half of the refund. *See id.* at *4.

As in *Hathaway,* the Court is unable to apportion the income taxes paid by Wynne and Murphy in 1994. Because the Court is unable to ascertain how much of the $ 9,951.96 carryback refund belongs solely to Wynne, the Court finds that Wynne is entitled to half of the carryback refund as a matter of law. *See* FED. R. CIV. P. 56(e); *see also Hathaway,* 1993 WL 207532, at *3; *Lechuga,* 949 F.2d at 794. Wynne admits that she received half of the refund. Accordingly, even when viewing the evidence in the light most favorable to Wynne, her claims for an additional portion of the refund fails to state a genuine

issue of material fact or law and they should be dismissed.

### C. The IRS's Proof of Claim

█ Wynne also argues that the IRS satisfied all of Murphy's unpaid taxes by recovering enough money from Murphy's bankruptcy estate. (Compl. at 11–13; Resp. at 3–4, 6, and 9.) The amount of money that the IRS recovered from Murphy's bankruptcy estate is a question of fact. *See Little,* 37 F.3d at 1075. According to Wynne, the IRS received full satisfaction of all back taxes owed by Murphy, and thus improperly allocated the other half of the carryback refund to pay Murphy's tax liabilities. (Compl. at 11–13; Resp. at 3–4, 6, and 9.) As the non-movant party, Wynne must come forward with specific facts showing that there is a genuine issue for trial with regard to whether Murphy's tax liabilities were satisfied by his bankruptcy estate and how this impacts her share of the refund. *See Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The record reflects that the IRS did not satisfy all unpaid taxes from Murphy's bankruptcy estate. Indeed, the IRS's final Proof of Claim alleged that Murphy owed $ 27,920.95 in past-due taxes, but the Agreed Final Judgment obligated Murphy to pay the IRS "the approximate amount of $ 724.00." (Compl. Att. 1 at 10; Att. 9.) Also in the Agreed Final Judgment, the "Court denied all relief not granted." (Compl. Att.1 at 30.) Wynne does not identify evidence in the record showing further satisfaction of the IRS's Proof of Claim. In light of the express language of the Agreed Final Judgment, Wynne has failed to demonstrate that there is a material issue for trial regarding the IRS's

Proof of Claim. *See* FED. R. CIV. P. 56(e); *see also Lechuga,* 949 F.2d at 794.[2]

### D. Wynne's Injured Spouse Claim

Wynne also argues that she was improperly denied "Injured Spouse" relief by the IRS. (Resp. at 9, Pl. Affidavit at 3.) The availability of injured spouse relief requires an interpretation of federal law which, there being no real dispute about the facts, is appropriate for summary judgment. *See Miller,* 2003 WL 23109906, at *3.

Wynne asserts that on September 13, 2000, she filed an Injured Spouse Claim and Allocation Form 8379. According to the United States, a taxpayer uses such a form when he or she is married, files a joint return and made a joint overpayment, and one spouse has past-due federal tax or child or spousal support obligations that the other spouse does not want to pay. (Reply at 1.) If the non-liable spouse files Form 8379, he or she may be entitled to a portion of the overpayment. *See id.*

█ The form contains three requirements that an injured spouse must meet to obtain relief. If the taxpayer's "main home was in a community property state" then the spouse cannot claim injured spouse relief if he or she was "required to pay the past-due amount." (Reply App. at 1.) The United States cites this language and argues that because Texas is a community property state, and the carryback refund was community property, Wynne was "required to pay" for Murphy's separate debts. *See id.* Wynne refutes this argument and avers that she was denied injured spouse relief before the IRS provided her with "adequate information" to complete the form. (Pl. Affidavit at 3.)

---

2. The Court notes that even if the IRS had improperly applied Murphy's share of the 1994 carryback refund to cover taxes paid by his bankruptcy estate, Wynne fails to show how that would affect *her share* of the refund.

It is undisputed that Wynne's main home was in Texas, a community property state, at the time of the filing of her 1994 joint return and Form 8379. Based on an application of the tax code and applicable case law, the Court has already decided that the carryback refund will be apportioned equally to Murphy and Wynne. The Court notes that Form 8379 defines "injured spouse":

> You are an injured spouse if you file a joint return and all or part of *your share* of the overpayment was, or is expected to be, applied (offset) against your spouse's past-due Federal tax, child or spousal support, Federal nontax debt (such as a student loan) or state income tax.

(Reply App. at 5) (emphasis added). As explained above, Wynne received "her share" of the carryback refund. Because the IRS did not use "her share," but rather Murphy's share, to cover his taxes, Wynne's share was not affected. Thus, as a matter of law, Wynne is not an "injured spouse" as defined in Form 8379. Because Wynne is excluded from the definition of taxpayers allowed to use the form, it is unnecessary to address the United States' argument that Wynne is excluded from Form 8379 by its application to residents in community property states. Accordingly, the IRS' denial for Wynne's Form 8379 does not create a genuine issue of law for trial. *See* FED. R. CIV. P. 56(e); *see also Lechuga*, 949 F.2d at 794.

### III. CONCLUSION

For the foregoing reasons, the Court finds that as a matter of law Wynne received her full share of the 1997 carryback refund and is not entitled to any additional money, nor is she entitled to Murphy's share of the refund by filing for injured spouse relief. In addition, no genuine issue of material fact exists with respect to the satisfaction of Murphy's tax liabilities by the division of his bankruptcy estate.

Accordingly, *United States' Motion for Summary Judgment* is hereby **GRANTED,** and this case is **DISMISSED** with prejudice.

### *JUDGMENT*

As set forth in the Court's *Memorandum Opinion & Order*, dated January 30, 2004, the Court has considered the various pleadings and evidence submitted by the parties with respect to the *United States' Motion for Summary Judgment*. The issues have been duly considered and a decision duly rendered granting the motion for summary judgment.

Pursuant to FED. R. CIV. P. 58(a) and the Court's *Memorandum Opinion & Order*, it is therefore **ORDERED, ADJUDGED,** and **DECREED** that this action is hereby **DISMISSED** with prejudice.