IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 97-60105

JACQUELINE RAGAN,

                                   Petitioner-Appellant,

                    versus

COMMISSIONER OF INTERNAL REVENUE,

                                   Respondent-Appellee.

Appeal from the Decision of the United States Tax Court

February 17, 1998

Before POLITZ, Chief Judge, and HIGGINBOTHAM and DeMOSS, Circuit Judges.

HIGGINBOTHAM, Circuit Judge:

Jackie Ragan appeals the Tax Court's denial of her petition seeking an income tax refund. Jackie also challenges the Tax Court's rulings on her motions for attorneys' and accountants' fees and for sanctions against the IRS. We AFFIRM the Tax Court's judgment with respect to the refund and sanctions issues, REVERSE the Tax Court's judgment awarding attorneys' and accountants' fees and REMAND for a new calculation of fees.


                              I

Jackie and David Ragan reside in Texas and filed joint income tax returns for 1980-84. The income reported for 1980 derived from David's wages from his employment at ContiArbitrage-Houston. In

April 1985, the Ragans requested an income tax refund for 1980 due to a large net operating loss carryover from their 1984 return. The IRS asked the Ragans to extend the statutes of limitations for the relevant returns in order to conduct an audit to determine if they were entitled to a refund. The Ragans agreed to do so and the audit commenced in April 1985.

In August 1985, David filed a voluntary petition in bankruptcy. As part of that proceeding, he asserted a claim of $108,935 against the United States which was the amount of the refund he and Jackie sought for 1980. The IRS filed a claim against David's bankruptcy estate for $11 million based on preliminary findings it had made in its audit. In addition, the IRS argued that any refund to which David was entitled was subject to setoff for the employment taxes he owed. Ultimately, the bankruptcy trustee and the IRS entered into a court-approved settlement under which the IRS paid the trustee the 1980 refund, offset by unpaid pre-petition employment taxes, penalties, and interest, and dropped its $11 million claim against David's estate.

In June 1987, David turned over to the IRS's Criminal Investigation Division all of his financial records. In February 1989, David was indicted for mail and wire fraud relating to financial transactions he made in the course of his employment. David was convicted, but this court reversed his conviction on appeal for insufficient evidence. United States v. Ragan, 24 F.3d 657 (5th Cir. 1994). David was also a party in a multi-district civil suit alleging that he participated in fraudulent transactions

2

while employed for ContiArbitrage-Houston. <u>See</u> <u>In re ContiCommodities Servs., Inc.</u>, 733 F. Supp. 1555 (N.D. Ill. 1990), *aff'd in part sub nom,* <u>ContiCommodity Servs., Inc., v. Ragan</u>, 63 F.3d 438 (5th Cir. 1995), <u>cert. denied,</u> 116 S. Ct. 1318 (1996).

In late 1989, Jackie terminated her extension of the statutes of limitations on the joint tax returns. As a result, on April 27, 1990, the IRS sent Jackie a statutory notice of deficiency for at least $1.7 million in income taxes and penalties for 1980-82. The notice of deficiency also demanded that Jackie repay $50,695.31 for the "erroneous" 1980 refund the IRS paid to David's bankruptcy estate and disallowed the Ragans' farm-related expenses, losses of the R&H Associates, government securities and futures trading deductions, and losses relating to investments in two national limited partnerships.

On July 30, 1990, Jackie filed a petition in the United States Tax Court contesting the notice of deficiency and asserting that she was entitled to one-half of the 1980 refund previously paid to David's bankruptcy estate. The IRS filed an answer to Jackie's petition in which it denied that any of its allegations in the notice were erroneous.

On September 29, 1992, the IRS Examination Division sent David and Jackie a letter that there was "no-change" in their tax liabilities for the years 1980-84. In June or July 1993, the IRS Appeals Division learned of the "no change" letter and sent Jackie a proposed settlement showing that she was not liable for any deficiencies. Jackie and the IRS eventually settled all matters in

3

the notice of deficiency. Jackie did not inform the IRS attorney working on her case about receiving the "no-change" letter until February 20, 1996.

After the settlement on the deficiencies, Jackie continued to pursue her claim for one-half of the 1980 refund. In addition, Jackie moved for sanctions against the IRS under Tax Ct. R. 33. The IRS filed a response opposing the sanctions motion. The Tax Court denied Jackie's motion for sanctions and further held that Jackie was not entitled to any portion of the 1980 refund paid to David's bankruptcy estate.

After the resolution of the substantive claim, Jackie filed a renewed motion for sanctions and a petition for attorneys' and accountants' fees. The Tax Court denied her request for sanctions. As for her petition for fees, the Tax Court ordered detailed affidavits describing the billing practices of her attorneys and accountants. After Jackie submitted this information, the Tax Court awarded her $1,762 in attorneys' and accountants' fees.

Jackie timely filed a notice of appeal of the Tax Court's orders resolving her claim to the 1980 refund, her motions for sanctions, and her petition for fees and costs. We have jurisdiction under 26 U.S.C. § 7482(a)(1). Venue is proper in the Fifth Circuit under 26 U.S.C. § 7482(b)(1)(A) because Jackie is, and was for the years in issue, a legal resident of Houston, Texas.

II

A

The parties agree that whether Jackie is entitled to one-half of the 1980 refund depends on the legal classification of the refund under Texas's community property regime. The proper standard of review is de novo. Vinson & Elkins v. C.I.R., 7 F.3d 1235, 1237 (5th Cir. 1993).

Under 11 U.S.C. § 541(a), David's bankruptcy estate included "[a]ll interests of the debtor and the debtor's spouse in community property as of the commencement of the case that is under the sole, equal, or joint management and control of the debtor." Id. § 541(a)(2). Consequently, Jackie can prevail on her claim only if she establishes that one-half of the 1980 refund was community property under her sole management and control.

Jackie argues that the characterization of the refund rests on who has control over the refund at the time the determination must be made, here the filing of David's bankruptcy petition. When a husband and wife file a joint return, each has a separate interest in the jointly reported income and in any overpayment. Rev. Rul. 74-611. "In a community property state, each spouse is considered the recipient of one-half of the wages upon which taxes are withheld and thus is entitled to a credit for one-half of the taxes that are withheld." Rev. Rul. 80-7. From these principles, Jackie draws the conclusion that one-half of the refund is subject to her sole management and control.

5

Persuasive authorities have rejected this argument. They reason from the precept that "the source of an overpayment of income tax determines the character of the refund, with a refund of excess withholding tax merely being a repayment of earnings from employment." In re Bathrick, 1 B.R. 428, 430 (S.D. Tex. 1979); see also Gehrig v. Shreves, 491 F.2d 668, 671-72 (8th Cir. 1974). Since personal earnings, while community property, are subject to the sole management and control of the spouse who earned them, Tex. Family Code Ann. § 3.102(a) (West Supp. 1998), the tax refund generated from the excess withholding of those earnings is as well. In re Bathrick, 1 B.R. at 430; accord In re Burke, 150 B.R. 660, 661 (E.D. Tex. 1993); In re Barnes, 14 B.R. 788, 790 (N.D. Tex. 1981); In re Hilliou, 1976 WL 1031 (E.D. Va. May 3, 1976).

Jackie did not dispute that the 1980 refund derived solely from the excess withholding of David's personal earnings. The court, following Bathrick, held that she was not entitled to any portion of it.

We agree with the Tax Court. "[T]he case law overwhelmingly establishes that overpayments by married couples are apportionable to each spouse to the extent that he or she contributed to the overpaid amount." Hathaway v. United States, 93-1 U.S.T.C. ¶ 50,285 (E.D. Wash. 1993) (citing cases). Filing jointly does not give one spouse an interest in the income of the other. Rev. Rul. 74-611. "[A] premarital or postmarital loss or credit may be applied only against the income of the person who incurred the loss or credit." Id. A joint income tax return does not create new

6

property interests for the husband or wife in each other's income tax overpayment.  Id.  Under Jackie's theory, filing a joint tax return would change the character of David's personal earnings from David's sole management community property to Jackie's sole management community property with respect to one-half of the earnings that were withheld in excess.  The tax laws do not countenance such a metamorphosis.  Thus, we hold that, to the extent that the income is attributable to one spouse's sole management community property, the refund from the excess tax on that income is the sole management community property of that spouse.  Jackie is not entitled to any portion of the 1980 refund.

III

We review the Tax Court's award of attorneys' fees for abuse of discretion and its subsidiary findings of fact for clear error. Powers v. C.I.R., 43 F.3d 172, 179 (5th Cir. 1995).

A prevailing party in a Tax Court proceeding may be awarded attorneys' fees if she (1) substantially prevailed with respect to the amount in controversy or as to the most significant issue or set of issues presented, (2) met the net worth requirements, (3) exhausted all administrative remedies, and (4) established that the position of the United States on the issue presented was not substantially justified.  26 U.S.C. § 7430 (1989).  Though she may satisfy these requirements, the prevailing party is not entitled to attorneys' fees for any portion of the proceeding which she has

7

unreasonably protracted.  Id.  The prevailing party must also show that her fees and litigation costs are reasonable.  Id.

There are only three remaining disputes between the parties on the attorneys' fees and litigation costs issue: (A) whether the IRS was substantially justified in demanding that Jackie repay the 1980 refund it paid to David's bankruptcy estate; (B) whether Jackie unreasonably protracted the Tax Court proceeding by not disclosing the September 29, 1992 "no-change" letter to the IRS attorney litigating this case until February 20, 1996; and (C) whether Jackie's attorneys' fees and costs were reasonable.

A

In the notice of deficiency, the IRS demanded that Jackie repay the 1980 refund it "erroneously" paid to David's bankruptcy estate.  The IRS made this demand to protect itself in case it lost on Jackie's claim for one-half of the 1980 refund.  The Tax Court accepted the IRS's explanation for the demand and concluded there was no "erroneous" refund issue to decide.  Jackie claims that she is entitled to attorneys' fees and costs expended in defending the demand because it was not substantially justified.

Jackie has the burden to show that the IRS's position was not substantially justified.  26 U.S.C. § 7430(c)(4) (1989); see also Heasley v. C.I.R., 967 F.2d 116, 120 (5th Cir. 1992).  "A position is substantially justified when it is 'justified to a degree that could satisfy a reasonable person.'"  Heasley, 967 F.2d at 120 (quoting Pierce v. Underwood, 487 U.S. 552, 565 (1988)).  The time

8

for its determination is the earlier of (1) the date petitioner receives notice of the decision of the IRS Office of Appeals, or (2) the date of the notice of deficiency. 26 U.S.C. § 7430(c)(7) (1989). The applicable time in this case is the date of the notice of deficiency, April 27, 1990.

It was disingenuous for the IRS to demand that Jackie repay the 1980 refund. Jackie never had any interest in the refund. The IRS knew that it had paid the refund to the bankruptcy trustee. Seeking the refund from Jackie was futile, which was later shown by the IRS's admission that it never expected to recover the refund from her. The IRS was not substantially justified in demanding repayment of the 1980 refund from Jackie. The IRS abuses its power by such tactics. Citizens are entitled to more from their government, and the tax collector has no pass. Jackie is entitled to recover attorneys' fees and costs for defending against the IRS's demand for repayment of the 1980 refund. We reverse the Tax Court's contrary holding.

B

The Tax Court found that Jackie had unreasonably protracted the litigation by not disclosing the "no-change" letter to the IRS attorney working on her case until February 20, 1996. As a result, it denied Jackie any attorneys' fees or costs incurred after September 29, 1992, the date of the "no-change" letter.

The IRS relies on Polyco, Inc., v. C.I.R., 91 T.C. 963 (1988), to support the Tax Court's ruling on this issue. This reliance is

9

misplaced, however, because the actions of the taxpayer in that case were different from Jackie's conduct here. In Polyco, the taxpayer was found to have protracted unreasonably the civil proceedings because his attorney consistently refused to meet with the IRS and violated the court's Standing Pretrial Order for disclosing trial records. Id. at 967. That has not been Jackie's conduct. She readily turned over all documents the IRS requested and met with IRS agents on numerous occasions. More importantly, the IRS Appeals Division conducted Jackie's audit and sent the "no-change" letter to Jackie and David. The IRS admits that the District Counsel and Appeals Division learned of the letter in June or July 1993. The IRS claims that it thought the letter went only to David, an excuse of no moment since David and Jackie filed jointly.

The IRS is responsible for the documents it distributes to taxpayers. See Han v. C.I.R., 1993 WL 325058 (U.S. Tax Ct. Aug. 24, 1993) (imposing sanctions on IRS for failing to honor discovery request for documents in taxpayer's administrative file). The Tax Court erred in placing a legal duty on Jackie to disclose to the IRS attorney handling her case the "no-change" letter the IRS had drafted, mailed, and possessed. See Johnson v. C.I.R., No. 92-04270 (5th Cir. March 23, 1993) (unpublished). We conclude that Jackie did not unreasonably protract the proceedings before the Tax Court and is not precluded from recovering attorneys' fees and costs incurred after January 29, 1992.

10

The Tax Court found unreasonable Jackie's submission for attorneys' fees and costs. The court first examined Jackie's overall request for fees and then the fees claimed for each individual attorney or accountant.

1

The Tax Court held that Jackie's total claim for attorneys' fees of $154,105.85 was unreasonable because a supplemental affidavit of Bruce Rose, one of Jackie's attorneys, reported $20,000 less in fees than his original affidavit. Jackie argues that the Tax Court abused its discretion because the discrepancy in Rose's affidavits was due to his including in his original, but not supplemental, affidavit his fees for preparing the § 7430 petition and sanctions motion.

In a proceeding to determine an award of attorneys' fees, an attorney may include in his supporting affidavit his fees for preparing the petition seeking litigation costs. <u>Cassuto v. C.I.R.</u>, 93 T.C. 256, 270 (1989), <u>aff'd in part, rev'd in part</u>, 936 F.2d 736 (2d. Cir. 1991). Following this principle, we see no reason why an attorney may not include in his supporting affidavit his fees for preparing a motion for sanctions submitted simultaneously with the petition for attorneys' fees. The Tax Court summarily disposed of Jackie's total request for attorneys' fees without delving into the basis for the discrepancy between Rose's supporting affidavits. That was error.

2

An attorney must do more than submit a broad summary of work done and hours logged to justify an award of attorneys' fees. Bode v. United States, 919 F.2d 1044, 1047 (5th Cir. 1990). A lawyer must present adequate evidence of the hours spent on the case and that those hours were reasonably expended. Heasley v. C.I.R., 967 F.2d 116, 123 (5th Cir. 1992). The Tax Court ordered each of Jackie's attorneys and accountants to submit a detailed summary, in the form of a chart showing such items as date, issue, time expended and nature of the services performed, justifying his claim for fees. Failure of an attorney to fulfill all the reporting requirements in a Tax Court's order does not preclude an award of fees for that attorney. See Heasley, 967 F.2d at 123-24.

a

The Tax Court refused to award Jackie any fees with respect to attorney Thomas Redding because his billing summary did not delineate the issues on which he had worked. Our review of the record shows that Redding worked on Jackie's claim to the 1980 refund and on her § 7430 petition for attorneys' fees. Jackie is entitled to recover fees with respect to the latter issue but not the former. Though not elaborate, we do not think Redding's billing sheets were so cryptic as to preclude an award of fees. Given the abbreviated nature of his billing summary, however, we refuse to award Redding for any time he spent on Jackie's case prior to April 20, 1995, the day the Tax Court denied Jackie's refund request. Because he worked on her petition for attorneys'

12

fees, the Tax Court abused its discretion in disavowing Jackie any recovery with respect to Redding's efforts on her behalf.

b

The Tax Court denied Jackie an award of attorneys' fees for Bruce Rose because it found that Rose did not work on issues for which Jackie was entitled to an § 7430 award. The Tax Court based its ruling on Rose's affidavit indicating that the majority of his time spent on Jackie's case pre-dated his admission and appearance before the Tax Court and was not directed by one of Jackie's attorneys who was admitted to practice before the Tax Court. The Tax Court clearly erred in finding that Rose did not expend any efforts on a recoverable issue in Jackie's case. Though he primarily represented David in the related civil cases, Rose also dedicated time to issues in Jackie's case for which she is entitled an award of attorneys' fees, such as disputing the IRS's demand that Jackie repay the 1980 refund and preparing the § 7430 petition. Though an attorney's report to the Tax Court must be sufficiently detailed, we have found that a summary stating the hours billed and by whom met the reporting requirements where it was obvious the attorney had participated extensively in the case. Powers, 43 F.3d at 181. Thus, we conclude that the Tax Court abused its discretion in not awarding Jackie attorneys' fees for any of the time Rose worked on her case.

c

The Tax Court awarded Jackie fees for only 10 of the 33.75 hours attorney James Mulder submitted for his time of service

13

because it was unable to determine the issues upon which Mulder worked. Since Mulder prepared Jackie's original petition, the Tax Court believed that Mulder did perform some work on issues for which Jackie could recover attorneys' fees. Ten hours was the court's best estimate of his compensable time.

When an affidavit lacks detail necessary to determine precisely an attorney's fees, the court may estimate the time the attorney spent on compensable issues. See Powers, 43 F.3d at 181. The record shows that Mulder spent his time preparing and prosecuting Jackie's original petition in the Tax Court. Jackie is entitled to recover attorneys' fees on all issues presented in the original petition, except for her claim to the 1980 refund and the losses associated with the national partnerships. Estimating Mulder's compensable time to be only ten hours given the numerous issues in the petition on which Jackie is entitled to an award of fees was an abuse of discretion.

d

The Tax Court denied almost all of the fees Jackie submitted for the accounting services McEvoy & Co. performed for her case. The court ruled that McEvoy failed to distinguish between its efforts for Jackie's case and those for David's civil suits. In addition, the court held that in order to recover fees under § 7430, an accountant must show that the work undertaken was done pursuant to the direction or employ of an individual authorized to practice before the Tax Court. The Tax Court found that McEvoy could not make such a showing for most of the hours it worked on

14

Jackie's case. The Tax Court estimated that McEvoy deserved compensation for 8.5 hours of the 829 hours it submitted.

Jackie may not recover the total amount of fees for McEvoy's services since its work was for David's civil suits as well as Jackie's case. See Mearkle v. C.I.R., 90 T.C. 1256, 1261-62 (1988). It does not follow that virtually all of McEvoy's fees properly can be disregarded. Since McEvoy was Jackie's and David's accountant, they both reasonably required McEvoy's work in preparing for their separate but related trials.

The Tax Court also held that "reasonable litigation costs . . . do not include the fees of an accounting firm not working under the direction or employ of an individual authorized to practice before the Court." Guyan Oil Co. v. Commissioner, No. 5463-86, 1988 WL 102180 (U.S. Tax Ct. Oct. 6, 1988), upon which the Tax Court based its holding, does not stand for this principle. In Guyan Oil, the court, in dicta, indicated that if an accountant was seeking reimbursement under § 7430 for handling the legal aspects of his client's case, he must be admitted to the Tax Court or working under the direction of someone who was. Id. at *6; see also 26 U.S.C. § 7430(c)(3). In such a situation, the accountant is receiving "attorneys' fees" and not fees as an expert witness. See Cozean v. C.I.R., No. 19318-95, 1997 WL 633247 (U.S. Tax Ct. Oct. 15, 1997). The Tax Court cites no other authority for its proposition. We reverse the Tax Court's ruling and hold that the fees of one who prepares an analysis or report necessary for a party's case are recoverable as reasonable litigation costs,

15

irrespective of whether the person is admitted to practice before the Tax Court, or employed by someone who is.  See 26 U.S.C. § 7430(c)(1)(B)(i) (Supp. 1997).

In this case, McEvoy prepared analyses which were significant to Jackie's case in defending against the notice of deficiency. Moreover, Mulder, and later Rose, enlisted McEvoy as an expert for Jackie's case.  McEvoy's work relates to issues upon which Jackie is entitled to recover litigation costs.  The Tax Court erred in awarding Jackie only a modicum of McEvoy's fees based on the court's incorrect reading of Guyan Oil.

We reverse the award of attorneys' and accountants' fees and remand for a new calculation consistent with this opinion.


IV

Jackie's motions for sanctions against the IRS, first under Tax Ct. R. 33 and then under Rule 33 and 26 U.S.C. § 6673 (Supp. 1997), were denied.  We review for abuse of discretion.  See First Nat'l Bank v. Lustig, 96 F.3d 1554, 1573 (5th Cir. 1996).

Rule 33 parallels Fed R. Civ. P. 11, including an award of attorneys' fees for its violation.  Versteeg v. C.I.R., 91 T.C. 339 (1988).  Section 6673(a)(2) imposes liability on the United States for excess costs, expenses, and attorneys' fees if an attorney for the United States unreasonably and vexatiously multiplies the proceedings before the Tax Court.  26 U.S.C. § 6673(a)(2) (Supp. 1997).

Jackie asserts that the IRS's answer to her petition was not well grounded in fact and supported by existing law at the time it was filed. At that time, the IRS's audit of the Ragans had been ongoing for five years. When filing its answer, Jackie claims that the IRS either knew that she and David did not owe any tax deficiency other than that relating to the national partnerships, or that it had failed to perform any investigation of Jackie's tax liability. For support, Jackie points to the IRS's capitulation with respect to the asserted tax liabilities, other than the national partnerships, three years after the answer was filed. We disagree. The IRS filed its answer on September 27, 1990. At that time, there were both civil and criminal investigations into the legitimacy of David's financial transactions during his employ at ContiArbitrage-Houston. The IRS's notice of deficiency against Jackie was based in part on these same transactions. The IRS was not unreasonable in alleging that Jackie owed additional taxes and penalties resulting from David's trading activities.

Jackie also contends that the errors in the IRS's response to her first motion for sanctions give rise to a Rule 33 violation. The Tax Court acknowledged that the affidavit of Teresa Barnett, attached to the IRS's response, incorrectly stated that the partnerships in which the Ragans had an interest engaged in government securities trading. The court believed, however, that Jackie was exaggerating the significance of these inaccurate statements. We agree with the Tax Court. Though the IRS's

17

response was not perfect, it does not warrant sanctions under Rule 33.

Finally, with respect to Jackie's claim for sanctions under § 6673(a)(2), the Tax Court did not abuse its discretion in ruling that no IRS attorney had multiplied the proceedings unreasonably or vexatiously. Jackie's case was part of a complex situation involving several civil suits and a criminal prosecution. Though the IRS could have been more diligent in processing Jackie's petition, its conduct was not so egregious as to justify the extraordinary action of imposing sanctions under § 6673.

V

To sum, we AFFIRM the Tax Court's judgment denying Jackie's claim to one-half of the 1980 refund and her motions for sanctions, REVERSE the Tax Court's judgment awarding Jackie attorneys' and accountants' fees, and REMAND for a new calculation of attorneys' and accountants' fees.