IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---

No. 99-60209

---

JACQUELINE RAGAN,

Petitioner-Appellant,

versus

COMMISSIONER OF INTERNAL REVENUE,

Respondent-Appellee.

---

Appeal from the Decision of the
United States Tax Court

---

April 21, 2000

Before POLITZ, JOHN R. GIBSON,[*] and HIGGINBOTHAM, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Jacqueline Ragan appeals the Tax Court's rulings on her motions for attorney fees and litigation expenses incurred in successfully defending claims made by the IRS which were not substantially justified. We find that the Tax Court abused its discretion in calculating some portions of Jacqueline Ragan's fees. Consequently, we AFFIRM in part and REVERSE in part, calculating the final fee award to be $52,844.59.

I

This appeal follows our previous remand to the Tax Court in Ragan v. Commissioner[1] (Ragan I). On remand, the Tax Court was

---

[*]Circuit Judge of the Eighth Circuit, sitting by designation.

[1] 135 F.3d 329 (5th Cir. 1998).

ordered to recalculate Jacqueline Ragan's award of I.R.C. § 7430 litigation fees and expenses she incurred because of IRS demands which were not substantially justified.[2]

On April 27, 1990, the IRS sent Jacqueline Ragan (Jackie) a statutory notice of deficiency for more than $1.7 million in taxes, interest, and penalties for 1980-82.  The notice also demanded that Jackie repay approximately $50,000 for an "erroneous" refund that the IRS had paid to Jackie's husband David's bankruptcy estate.

On July 30, 1990, Jackie filed a petition in the Tax Court contesting the deficiency and asserting that she was entitled to one-half of the refund.  On September 29, 1992, the IRS sent Jackie and David a letter that there was "no-change" in their tax liabilities for 1980-84.   It was not until approximately July of 1993, however, that the IRS Appeals Division unofficially proposed a settlement showing that Jackie was not liable for any deficiencies.  Further, this settlement was not official until October 8, 1993, approximately two weeks before the scheduled trial.

Thus, in the end, the Commissioner's more than $1.7 million in claimed back taxes, penalties, and interest had been reduced to nothing.  Jackie continued to pursue her claim for one-half of the $50,000 refund, although the Tax Court held and this court affirmed in Ragan I that she was not entitled to half of the $50,000 refund.[3]

On August 30, 1995, Jackie filed an I.R.C. § 7430 petition for attorney and accounting fees and expenses totaling approximately

---

[2] Id. at 338.

[3] Id.

$155,000.  In response to Jackie's petition, the Commissioner admitted that Jackie had substantially prevailed and that the Commissioner was not substantially justified in most but not all of the asserted deficiencies.[4]  The Tax Court then requested Jackie's attorney and accountant to prepare supplemental affidavits explaining the basis for Jackie's fee request.  After receiving those affidavits, however, the Tax Court awarded Jackie less than $1,800 in fees and expenses.[5]

Jackie appealed the award to this court.  In our decision, this court held that the IRS was not substantially justified in demanding that Jackie repay the entire 1980 refund it had "erroneously" paid to David's bankruptcy estate.[6] As such, Jackie was entitled to an award of attorney fees and litigation expenses incurred in defending against the IRS refund demand, including fees and expenses incurred in her motions for fees, also known as "fees for fees."  This court also held that Jackie should not have been denied her other fees because of inadequate documentation, and remanded for a new calculation.[7]

On remand, Jackie requested additional litigation costs of over $35,000 incurred in preparing her original fee request, in addition to the approximately $155,000 sought originally for the substantive litigation work.  Out of the nearly $190,000 sought on

---

[4] The issues on which Jackie had prevailed and which the IRS did not have substantial justification included: (1) Schedule F farm/horse breeding losses; (2) tax consequences of trading in government securities; and (3) tax penalties, except to the extent related to DOT and Salmonella issues.

[5] See Ragan I, 135 F.3d at 332.

[6] See id. at 335.

[7] See id. at 336-38.

remand, the Tax Court completely denied the new $35,000 request as untimely and awarded Jackie just over $19,000 with respect to the original request.  Jackie appeals once again from the Tax Court's calculation.

II

On remand, Jackie requested litigation costs associated with the portions of the preparation of her original fee request, commonly known as "fees for fees."  The Tax Court denied these fee requests as untimely, stating that Jackie should have requested these fees within thirty days of the Tax Court's original fee award decision.  In this appeal, Jackie first challenges the Tax Court's determination regarding the timing of her fees for fees request. We review the Tax Court's award of attorney fees for abuse of discretion and its subsidiary findings of fact for clear error.[8] We review the Tax Court's interpretation of the applicable law and statutes de novo.[9]

Normally, a party can request fees only if she substantially prevails on the amount in controversy or the most significant issue or set of issues presented.[10]  At that point, a party has thirty days to submit a fee request after the decision giving rise to the right to fees.[11]  In her final original fee request, Jackie did not request "fees for fees."[12]  However, the Tax Court's original

---

[8] See Powers v. Commissioner, 43 F.3d 172, 179 (5th Cir. 1995).

[9] See Vinson & Elkins v. Commissioner, 7 F.3d 1235, 1237 (5th Cir. 1993).

[10] See Ragan I, 135 F.3d at 334.

[11] See Tax Ct. R. 231(b).

[12] Apparently, in her *original*, but not *final*, fee request, Jackie did request "fees for fees" for Rose, but then inexplicably, Rose removed those fees from his first supplemental affidavit, which "finalized" Jackie's original fee request.

4

assessment of Jackie's fee request awarded Jackie less than $1,800 out of nearly $155,000 requested.

Thus, according to Jackie, she had not "substantially prevailed" on her original request for § 7430 fees; therefore, she had no basis to claim "fees for fees" at that time. Instead, it was not until this court reversed the Tax Court's decision that Jackie potentially had a legal basis for requesting additional fees for preparing the earlier fee petition. Then, on July 20, 1998, Jackie submitted a second Supplemental Affidavit from her attorney, (Bruce Rose) and accounting firm (McEvoy & Co.), setting forth the fees and expenses they incurred in preparing their original Supplemental Affidavits pursuant to the Tax Court's April 29, 1996 order.[13]

The IRS claims that Jackie is not entitled to seek these fees on remand because they were not raised in the first appeal, and thus not within the scope of the order on remand.[14]

In her prior appeal, however, Jackie did request the right to submit a § 7430 petition for "fees for fees" if our court ruled in her favor.[15] Furthermore, our decision in Ragan I did not shut this door.[16] Instead, the language of this court specifically suggested

---

[13] These affidavits showed that Rose expended 84.75 hours to prepare Jackie's fee request. McEvoy & Co. claimed the following rates and time for the fee request: Chase McEvoy, 46 hours, $120/hour; Atchison, 58 hours, $65/hour; and Trevett, 22.5 hours, $45/hour. All told, McEvoy claimed approximately $10,300 in fees for fees, while Rose expended 84.75 hours. Jackie incurred an additional $1,192.04, primarily in copying costs, associated with these fee requests.

[14] See United States v. Marmolejo, 139 F.3d 528 (5th Cir.), cert. denied, 119 S. Ct. 622 (1998); United States v. Adesida, 129 F.3d 846, 849-50 (6th Cir. 1988).

[15] See Ragan I, Appellant's Brief, n.9.

[16] See 135 F.3d at 335.

5

that Jackie could receive her § 7340 "fees for fees" on remand.[17]

The IRS claims that the "substantially prevailed" requirement only pertains to the merits of a case and not the right to fees, yet cites no authority for this proposition. At best, the IRS makes a policy argument that "fees for fees" should be requested at the time of the original fee request in order to prevent a cascading, "ad infinitum" series of fee requests, in which a party first requests fees, then later requests "fees for fees," and then later requests "fees for 'fees for fees,'" and so on.

Clearly, prior cases grant "fees for fees" when requested alongside the original fee petition.[18] However, the danger of infinite, but decreasing, fee requests is more illusory than real. Attorneys have sufficient motivation to request their fees up front whenever possible. Moreover, such fees were explicitly within the scope of the remand order. Thus, we hold that under these limited circumstances Jackie's request for "fees for fees" should not have been considered untimely.

This request included a claim of 84.75 hours related to the preparation of Rose's first supplemental affidavit. The fact that Rose spent this much time on the affidavit is unrebutted, but the government claims it was an unreasonable amount of time. The actual affidavit itself was nearly 40 pages long and included over 100 pages of exhibits. This affidavit required Rose to explain in detail Rose's billing and work practices, including his method of keeping real-time contemporaneous time records, a chronology of his

---

[17] See id. at 336 (holding that Jackie's attorney "Rose . . . dedicated time to issues in Jackie's case for which she is entitled an award of attorneys' fees, such as . . . preparing the § 7340 petition." (emphasis added)).

[18] See, e.g., Powers, 43 F.3d at 179-80.

6

involvement in the case, and a response to the IRS's fee objections.

We agree that 84.75 hours is a considerable amount of time to prepare an affidavit, but the Tax Court apparently demanded some detail before determining Rose's fee award. We find, however, that approximately 15.25 of those hours related to a sanctions motion or matters pertaining solely to Jackie's husband David. Thus, we find that Jackie is only entitled to recover a reasonable fee for 69.5 hours.

In terms of Rose's hourly rate, this court has already held that an attorney is not entitled to a special factor enhancement for time spent preparing fee petitions.[19] Thus, the statutory rate (adjusted for the cost of living) applies. That adjusted rate for the year in which this work was performed was $98/hour.[20] Thus, the fee award for this portion amounts to $6,811.

On remand, the Tax Court's found that only 54 of Rose's claimed 140 hours for substantive work should be compensated. The rest were held to be uncompensable or labeled as excessive, duplicative, or unnecessary. The IRS concedes, however, that the Tax Court based this assessment on an erroneous review of Rose's *original* fee request of 231.5 hours rather than his *amended* fee request of 140 hours (from which Rose had removed hours which were not compensable).

In its original January 23, 1997 Order, the Tax Court

---

[19] See id. at 183.

[20] Cf. Perales v. Casillas, 950 F.2d 1066, 1075-76 (5th Cir. 1992) (requiring that under the Equal Access to Justice Act, a statutory fee award must be based on the statutory rate of the year in which services were rendered so as to avoid an impermissible interest charge against the United States).

7

precluded any fees and expenses for Rose and Jackie's accounting firm McEvoy & Co. because they were not admitted to practice before the Tax Court. This court rejected that holding and held that Rose was entitled to recover for work done on Jackie's case and McEvoy & Co. was entitled to its fees and expenses as well.[21]

On remand, and at the IRS's request, the Tax Court <u>again</u> interpreted § 7430 to preclude an award of fees and costs to an attorney who is not authorized to practice before the Tax Court, claiming that § 7430(c)(3) defines attorney fees as "fees for the services of an individual . . . who is authorized to practice before the Tax Court."

The actual language of § 7430(c)(3), however, only states that fees for an individual who is authorized to practice before the Tax Court shall be considered attorney fees whether or not that individual is an attorney. But the language in no way limits attorney fees to those who are authorized to practice before the Tax Court. Instead, the language is plainly worded to merely ensure than non-attorneys who are admitted to practice before the Tax Court <u>also</u> get compensated as attorneys.

The Tax Court's determination that only 54 of Rose's hours are reimbursable is thus clearly erroneous because it looked at the wrong fee request and because it misinterpreted § 7340. On appeal, the IRS has finally dropped its erroneous interpretation of § 7430, but still claims that the Tax Court's finding of 54 hours should be affirmed simply because Rose's claimed 140 hours are excessive.

The Tax Court held that Rose expended only 1 hour on the refund issue on which this court specifically directed the Tax

---

[21] <u>See</u> <u>Ragan I</u>, 135 F.3d at 336-37.

8

Court to award fees.[22] Rose's uncontradicted affidavit shows he expended 14.5 hours. The IRS claims these hours were wasted, but in fact they represented an effort to eliminate the refund issue in this case by involving the Bankruptcy Court. This effort was eventually abandoned by Rose, but that does not mean it was an unreasonable attempt to resolve an issue which the IRS pressed without substantial justification. It makes little sense for the IRS to complain that a taxpayer ran in circles trying to defend against the IRS's unjustified demands.

Rose's affidavit also shows he expended 41.75 hours on reviewing case law associated with Jackie's case which was related to the tax aspects of government securities and commodities trading. Rose did this in order to predict the IRS's potential arguments. The IRS claims, incredibly, that Rose should have called up the Commissioner in order to find out what arguments the Commissioner was planning to advance.

Rose also expended 66 hours preparing a summary judgment motion that ultimately could not be finished because of a conflict between the application of tax law and securities law. In Rousseau v. United States,[23] a district court denied compensation for an unfiled summary judgment motion. However in this case, unlike in Rousseau, it was shown that Rose's work on the summary judgment motion was not wasted but was in fact necessary work as part of general trial preparation, since the preparation of the summary judgment motion organized the theories and evidence of the case with respect to the applicable tax law. Thus, we cannot say that

---

[22] See id. at 336.

[23] Civ. A. No. 90-2333, 1991 WL 136992 (E.D. La. July 12, 1991).

9

the time was fruitless.

Rose also expended 8.75 hours on general trial preparation in 1993, which the government claims is impossible because "no dispute existed in 1993 as to issues on which the Commissioner lacked substantial justification." However, although the Ragans were informed that such disputes might be resolved as early as 1992, the actual settlement of those disputes did not occur officially until October 8, 1993, approximately two weeks before the scheduled trial. Thus, it is hard to say that Rose should not have spent any time preparing for a trial in 1993, when trial was not avoided until two weeks prior.

Finally, Rose accounted for an additional 9 hours of miscellaneous time related to Jackie's case. Thus Rose's accounting shows that his requested time either applied to the refund issue – which this court held was compensable – or to the commodities and government securities trading issues on which Jackie substantially prevailed. Moreover, the IRS never objected to Rose's time entries before. For these reasons, we find it reasonable to credit all 140 of Rose's claimed substantive hours.

Jackie requested, however, that Rose be compensated, in part, at a rate of $250/hour, well above the statutory rate of $92/hour that would otherwise apply to the fees at issue.[24] The Tax Court held that Rose had not shown any reason to receive a higher rate. In general, a $75/hour base fee applies "unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for

---

[24] Not only is $250/hour well above the statutory cap, it is also in excess of Rose's typical $200/hour rate.

10

the proceedings involved, justifies a higher fee."[25]

Rose had extensive background experience in the field of securities and commodities law, having spent 27 years in and around the securities industries both before and after law school. His expertise is apparently possessed by fewer than 100 attorneys in the country. According to Rose, only someone familiar with actual industry practice would able to demonstrate the conflicts between the IRS's theories of securities law and the actual application of the law in the real world.

Our circuit has made clear, however, that a mere legal specialization is not a basis for an enhanced fee.[26] As the appellant noted in her brief, Rose "was brought into the case primarily for his experience and background in securities and commodities law."[27] Jackie also argues that Rose's experience included not only a lawyer's knowledge of those legal areas, but also a "familiarity with back office procedures and other business and regulatory aspects of the financial community."[28]

Based on our review of the record, however, we are not persuaded that Rose's special expertise went sufficiently beyond specialized legal knowledge that the Tax Court's denial was an abuse of discretion. Admittedly, business and law are inextricably combined, especially in the field of securities and commodities regulations, and we do not hold that knowledge or expertise in business may never be a basis for a special factor.

---

[25] 28 U.S.C. § 2412(d)(2)(A)(ii).

[26] See Perales, 950 F.2d at 1078.

[27] See Brief of Appellants, at 35 (emphasis added).

[28] Id.

11

Jackie also received a real benefit from Rose because he was intimately familiar with David's trading practices from his prior work on the case. Such accumulated case knowledge may have created a windfall for Jackie for which Rose would like to charge, but we hold that it also does not support an enhanced fee award for Rose's time, despite the fact that no other attorney possessed that accumulated knowledge.

In sum, we award Jackie $12,880 for Rose's substantive work, $6,811 for his fees for fees, and $75.65 for his expenses,[29] totaling $19,766.65.

III

McEvoy & Co. claimed over $70,000 in fees not counting expenses. The Tax Court allowed just over $10,000. The Tax Court decided that many of McEvoy & Co.'s hours were expended on David's litigation and not Jackie's. Jackie concedes that, but argues that she should get half of McEvoy & Co.'s requested fees, regardless.

The Tax Court denied fees for a substantial amount of the time that McEvoy & Co. expended on Jackie's case.[30] Chase McEvoy's billing entries were coded to the client for which the work was performed. The Ragans' billing entries were labeled as either "David-Jackie," "David," "Estate of David," or "Jackie." For the purposes of determining Jackie's award, the Tax Court only credited

---

[29] Initially, the Tax Court discounted these expenses because Rose did not recover all of his claimed hours. Since our award credits all of Rose's hours, his expenses need not be discounted.

[30] In its supplemental affidavit, McEvoy claimed the following fees: Chase McEvoy, 515.9 hours at $120/hour; Thayer, 22.8 hours at $101/hour; Prestwood, 26.5 hours at $75/hour; Atchison, 186 hours at $30/hour; Trevett, 69.8 hours at $20/hour; Dang, 7.5 hours at $20/hour. The Tax Court allowed $10,295: Chase McEvoy, 50.75 hours; Thayer, 13.5 hours; Prestwood, 20 hours (all at $92/hour); Atchison, 82 hours at $30/hour; Trevett, 4.2 hours at $20/hour; Dang, 0 hours.

the hours labeled as "Jackie" along with half of the hours labeled "David-Jackie."[31]

Jackie claims that much of McEvoy & Co.'s work was done on behalf of both Jackie and David, despite references only to David. However, McEvoy & Co. previously tried to recover the fees for all of these disputed hours from David's bankruptcy estate, although McEvoy & Co. was unsuccessful. Jackie now wants to reclaim those hours. The Tax Court decided, however, that McEvoy & Co.'s original hourly bills to David's bankruptcy estate affirmatively represented that those hours were done on behalf of David only. Thus, such representations estopped McEvoy & Co. from asserting otherwise to the Tax Court.

We do not believe that such "double billing" by itself necessarily would preclude Jackie from attempting to recover fees charged by McEvoy & Co. For example, if McEvoy & Co.'s contract with David and Jackie allowed McEvoy & Co. to recover payment from either David or Jackie or both, such "double billing" would simply have no relevance in determining whether those hours were performed on behalf of David instead of Jackie. In other words, there are two distinct issues: who was liable for the bill versus who received the services. But even if McEvoy & Co. could recover all of its fees from either Jackie or David, that does not mean that all of the work was performed on both Jackie and David's behalf.

According to McEvoy's affidavit, his company's billing codes unfortunately do not correlate with whether the work was done exclusively for the person listed. Nevertheless, it does not seem

---

[31] The Tax Court also determined which billing codes signaled work done for David versus Jackie with respect to McEvoy employees Thayer and Prestwood.

to be an abuse of discretion to require an accounting firm to code its work accurately, and if it does not do so, to use such codes as best estimates. To hold otherwise simply encourages sloppy billing practices and facilitates the practice of claiming that work done for one account was actually work done for another.

While we are sympathetic to the claim that such an accounting underrepresents the amount of work performed on Jackie's behalf, we will not require the Tax Court to delve deeply behind the billing codes in order to determine what work was done for whom. Thus, we find that Jackie may only claim those hours coded to her and half of those hours billed jointly to her and her husband, as determined by the Tax Court.

In calculating the fee award for McEvoy & Co.'s work, the Tax Court used a rate of $92/hour for several of the employees, which was the prevailing statutory rate for attorney fees (as adjusted for the cost of living). Although this created a windfall with respect to those employees whose services were billed at a lower rate, it is clearly erroneous, since $92/hour was the cap for attorney fees, and these are not attorney fees.[32] While $92 per hour might be a reasonable rate, it is not a reasonable rate by virtue of it being the attorney fee cap. Thus, we calculate McEvoy & Co.'s fees based on each employee's normal hourly rate, as there has been no showing that those rates are unreasonable. Thus, the

---

[32] The IRS claims that Jackie has waived this issue because the Tax Court used $92/hour in its original calculation, and Jackie did not specifically contest that rate in the first appeal. Cf., e.g., United States v. Parker, 101 F.3d 527, 528 (7th Cir. 1996). However, in her first appeal, Jackie successfully contested the Tax Court's refusal to consider McEvoy & Co.'s fees as litigation costs and this court specifically remanded for those fees to be recalculated as litigation costs. See Ragan I, 135 F.3d at 336-37. Thus, because Jackie prevailed on the broad issue in her first appeal, we find that the narrower issue was within the scope of remand and was not waived.

fee award for McEvoy & Co.'s substantive services totals $11,396.50.[33]

McEvoy & Co. requested fees for preparing their fee request.[34] All told, McEvoy & Co. claimed just over $10,000 in such fees.[35] While these fees nearly equal the fees awarded for McEvoy & Co.'s substantive work, we cannot say that they are unreasonable, given the complexity of the case and the uncertainty surrounding what portion of McEvoy & Co.'s time that the Tax Court would finally credit. On the one hand, it was not an abuse of discretion for the Tax Court to refuse to look behind McEvoy & Co.'s billing codes, but on the other hand, we do not think it was unreasonable for McEvoy & Co. to attempt to overcome their code deficiencies by preparing an elaborate fee request. Thus, we award $10,302.50 in fees for fees. In sum, we award $21,699 to Jackie for McEvoy & Co.'s fees, not yet counting the expenses addressed below.

The Tax Court labeled some of McEvoy & Co.'s expenses as overhead and therefore decided the expenses were not compensable. McEvoy charged $8,817.79 for the computer storage of the Ragans' financial records as well as $10,715.00 in rent, which included physical storage of the Ragans' documents, as well as office rent for David Ragan and Bruce Rose, when they were in Houston working

---

[33] The breakdown is as follows: McEvoy: 50.75 hours at $120/hour = $6,090; Thayer: 12.5 hours at $101/hour = $1,262.50; Prestwood: 20 hours at $75/hour = $1,500; Atchison: 82 hours at $30/hour = $2,460; Trevett: 4.2 hours at $20/hours = $84.

[34] The specifics of the request were as follows: Chase McEvoy: 46 hours at $120/hour; Atchison: 58 hours at $65/hour; and Trevett: 22.5 hours at $45/hour.

[35] See supra note 13.

15

on the case.

The Tax Court stated that these expenses were not reasonable expenses for an expert. From the early 1980s through the early 1990s, computer memory was not nearly as cheap as it was a few years later. Thus, charging for computer storage appears to have been a reasonable charge given the numerous records that McEvoy & Co. kept on their computers. Because computer memory is scalable, it can be a direct, variable cost that is not overhead. In other words, because memory can be purchased in increments, on an as-needed basis, it is possible and reasonable to attribute memory usage to a particular client. Thus, the computer memory is a reasonable expense for an expert, since it was necessary for McEvoy's case preparations. Absent any other means for division, we find that Jackie may recover half of the computer storage fee to recover her portion of the expense, which equals $4,408.90.

The above analysis turns on the peculiar nature of computer memory. The same cannot be said of physical office space, in which McEvoy & Co. stored the Ragans' actual documents. There was no evidence that McEvoy & Co. purchases incremental storage space to store clients' files; thus, the rent charge for the documents appears to be an attempt to recoup what is normally viewed as true overhead, which is not compensable.[36]

Once McEvoy & Co. stored the Ragans' documents, David Ragan and Bruce Rose were required to work at that location on occasion, since a temporary transfer of those files would have been difficult and costly. McEvoy & Co. charged rent for David and Rose's office use. Again, however, there is no evidence that such a charge for

---

[36] See Kuzma v. IRS, 821 F.2d 930, 933-34 (2d Cir. 1987).

16

office space was anything other than routine overhead as far as McEvoy & Co. was concerned; consequently, it was not compensable. Even if these charges were not considered to be overhead, they were not expenses of McEvoy & Co. in its capacity as an expert, but merely expenses in its capacity as a landlord, since the use of the office space was for the convenience of David and Rose and not McEvoy & Co. Either way, they are not reimbursable as litigation expenses of McEvoy & Co.

The Tax Court denied Jackie's request for expenses paid to Management Advisory Services (MAS). MAS provided bookkeeping services, but the Tax Court found the charge to be "unusual." MAS organized the Ragans' documents which were kept at McEvoy & Co.'s offices, which does not seem unusual, since MAS was able to perform the service better and cheaper than McEvoy & Co. could have done so. Since such organization was necessary for the preparation of David and Jackie's case, it is unreasonable to say that half of that $3,920 expense should not be awarded to Jackie as an expense of McEvoy & Co. Thus, we award $1,960 to Jackie for her portion of this expense.

Another expense incurred in this case related to the copying costs and other miscellaneous expenses associated with McEvoy's 1996 Supplemental Affidavit. These costs totaled $1,192.04, which we award to Jackie. Thus, the total award for McEvoy & Co.'s fees and expenses thus far is $29,259.94.[37]

The Tax Court discounted the expenses of McEvoy & Co.'s professionals by the same proportion that it discounted their

---

[37] We also find that consideration of MAS's fees was within the scope of remand and this appeal because this court previously reversed the trial court's entire calculation of the fees associated with McEvoy & Co.

requested hours. In other words, if a given individual claimed 100 hours of work and $20 in expenses, and the Tax Court found 60 compensable hours, then the Tax Court discounted the claimed expenses by 40% and awarded $12 in expenses.

The Tax Court cites no authority for discounting expenses based on its discounting of requested hours and had Jackie's accountants related <u>particular</u> expenses to <u>particular</u> hours, then it would not be reasonable to discount expenses associated with hours that were fully compensated. Absent more explicit accounting, however, we do not find that the Tax Court's method was an abuse of discretion. Thus, the Tax Court's calculation of $400 in remaining miscellaneous expenses for McEvoy & Co. stands. Thus, the total fee award with respect to McEvoy & Co. is $29,659.94.

V

Thus, Jackie's total fee award in this case is $52,844.59, consisting of the following components: $19,766.65 (Rose), $29,659.94 (McEvoy & Co.), $1,089 (Thomas E. Redding),[38] and $2,329 (James Mulder).[39]

AFFIRMED in part, REVERSED in part.

---

[38] Jackie did not challenge the award for Redding's services and therefore it remains the same as determined by the Tax Court.

[39] Jackie does not contest the award for Mulder's services, except with regard to his claimed expenses. We find no error with the Tax Court's assessment of $75 in expenses for Mulder. Mulder claimed expenses of $100.36, but these were properly reduced because he was unable to state with any degree of certainty whether certain expenses were related to Jackie's case.