IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 17, 2008

Charles R. Fulbruge III
Clerk

No. 07-20592

GINA E. GRAY,

Plaintiff-Appellant,

v.

UNITED STATES OF AMERICA, DEPARTMENT OF TREASURY,
INTERNAL REVENUE SERVICE

Defendant-Appellee.

Appeal from the United States District Court for
the Southern District of Texas, Houston Division

Before GARZA and ELROD, Circuit Judges, and HICKS, District Judge.[*]

JENNIFER W. ELROD, Circuit Judge:

Plaintiff-Appellant Gina Gray ("Gray") appeals the district court's summary judgment in her "innocent spouse" action to recover portions of tax overpayments applied to her husband's separate tax liability. Finding no error, we affirm.

## I. Facts and Proceedings

Gray and her husband filed joint personal federal income tax returns for the tax years 1994 through 1997. They litigated their tax liability for those years in the United States Tax Court, resulting in a series of stipulated decisions

[*] District Judge of the Western District of Louisiana, sitting by designation.

in which Gray's husband was deemed liable for certain tax deficiencies but Gray was held to be an "innocent spouse" pursuant to 26 U.S.C. § 6015. The stipulated decision for tax year 1994 found a deficiency of more than $200,000. Because of the operation of section 6015, Gray's husband was solely liable for this deficiency.

Gray and her husband continued to file joint tax returns and reported overpayments for the 1998, 1999, 2001, 2002, and 2003 tax years. The IRS applied all of these overpayments, totaling more than $20,000, to the 1994 deficiency. In 2005, Gray filed a claim with the IRS seeking a refund of her interest in the overpayments. The IRS conceded that it should not have applied Gray's interest in the overpayments to the 1994 deficiency, for which Gray's husband was solely liable, and refunded a portion of the overpayments to Gray. She nonetheless sued the IRS, alleging that its calculation of her interest in the overpayments failed to account properly for Texas community property law. Specifically, Gray claimed that in determining her sole management community property interest in the overpayments, the IRS should have made the "separate tax formula allocation . . . upon the basis of the spouse who earned the income and not upon the basis of a community property split." She sought actual damages of $4,280.

Gray and the IRS filed cross-motions for summary judgment. Gray conceded that under Texas law the IRS was entitled to offset the following against her husband's separate tax liability: (1) all joint management community property; (2) all of his sole management community property; and (3) half of Gray's sole management community property. She further agreed with the IRS that to determine her sole management community property interest in the overpayments, the IRS had to calculate her hypothetical separate tax liability for each year at issue. The single disputed issue before the district court was how Gray's separate tax liability should be calculated—Gray argued that it should be calculated based on the wages she personally earned, and the IRS

argued that it should be calculated based on fifty percent of all community income. The district court, in a thorough and well-reasoned order, agreed with the IRS:

> [Gray] proposes an alternative method, under which she is responsible for paying tax on the income she personally generated, i.e., her sole management community property. Because [Gray] earned less than her husband over the relevant period, her approach thus minimizes her share of the tax liability in the disputed years. As a result, she contends, she substantially overpaid her share of the taxes due and thus claims larger portions of the overpayments as her sole management community property. . . . [Gray's] proposed method of calculation is not supported by the IRS's revenue rulings or any other legal authority.

The court accordingly entered judgment for Gray in the amount of $401.84 plus prejudgment and post-judgment interest. Gray appeals the district court's decision.

## II. Standard of Review

We review de novo the district court's summary judgment determination of Gray's sole management community property interest in the tax overpayments at issue. See Ragan v. Comm'r, 135 F.3d 329, 333 (5th Cir. 1998) (citing Vinson & Elkins v. Comm'r, 7 F.3d 1235, 1237 (5th Cir. 1993)).

## III. Discussion

### A. The Issue on Appeal

In Texas, marital property consists of all property that a spouse brings to the marriage or acquires during the marriage. Marital property can be characterized as separate, community, or mixed. See Hilley v. Hilley, 342 S.W.2d 565, 567 (Tex. 1961); Gleich v. Bongio, 99 S.W.2d 881, 883 (Tex. Comm'n App. 1937). Community property in turn can be characterized as joint management community property or sole management community property. A spouse's sole management community property includes his or her "(1) personal earnings; (2) revenue from separate property; (3) recoveries from personal injuries; and (4) the

increase and mutations of, and the revenue from, all property subject to the spouse's sole management, control and disposition." Tex. Fam. Code Ann. § 3.102 (Vernon 2006). Community property not subject to the sole management, control, and disposition of one spouse is joint management community property.

The tax overpayments at issue in this case were withheld from wages that Gray and her husband earned during their marriage and are thus community property. See id. §§ 3.001, 3.002. More specifically, a portion of each overpayment is Gray's sole management community property, and a portion is her husband's sole management community property. See id. § 3.102. As Gray acknowledges, the IRS is entitled to offset against her husband's separate tax liability (1) all joint management community property; (2) all of his sole management community property; and (3) half of Gray's sole management community property. See id. § 3.202(c) (providing that a creditor may satisfy a debt from all community property subject to the liable spouse's sole or joint management, control, and disposition); Medaris v. United States, 884 F.2d 832, 833–34 (5th Cir. 1989) (holding that the IRS may reach half of a non-liable spouse's sole management community property to satisfy a liable spouse's tax debt). The only issue the parties dispute is how to determine the portion of each overpayment that is Gray's sole management community property.

Revenue Ruling 2004-74 sets out a five-step process for determining how much of an overpayment reported on a joint tax return the IRS may apply against one spouse's separate tax liability if the spouses are domiciled in Texas.[1] As the government explains in its brief, those steps are as follows: (1) determine

---

[1] Although not binding precedent, courts "generally accord significant weight to the determinations of the IRS in its revenue rulings." St. David's Health Care Sys. v. United States, 349 F.3d 232, 239 n.9 (5th Cir. 2003). But cf. Mercantile Bank & Trust Co. v. United States, 441 F.2d 364, 368 (8th Cir. 1971) (holding that conflicts between a revenue ruling and a statute must be resolved by the statute).

the underlying source of the overpayment, such as withholding and estimated tax payments or other credits; (2) characterize the underlying source of the overpayment as either separate or community property, because the overpayment will be characterized in the same manner as its source; (3) offset the liable spouse's share of the overpayment from a community property source against the liable spouse's separate tax liability; (4) determine whether, under Texas law, the IRS can reach any additional portion of the overpayment from a community property source; and (5) determine whether, under Texas law, the IRS can reach any portion of the overpayment from a separate property source of the liable or non-liable spouse. The application of steps 1, 2, and 3 in the present case is undisputed: the overpayments at issue are community property, and the IRS is entitled to offset at least fifty percent of the overpayments against the separate tax liability of Gray's husband. Step 5 is inapplicable, as none of the overpayments was made from a separate property source. The parties' disagreement relates only to step 4—determining what portion of each overpayment in excess of fifty percent, if any, the IRS can offset against the separate tax liability of Gray's husband.[2]

B.    The District Court's Decision

Revenue Ruling 2004-74 provides that "[t]he amount of the spouse's interest in the overpayment is calculated by subtracting the spouse's share of the joint tax liability, determined under a separate tax formula, from the spouse's contribution towards the joint tax liability." The revenue ruling further provides that a spouse's share of the joint tax liability is calculated as follows:



$$\frac{\text{Spouse's Separate Tax}}{\text{Total of Both Spouses' Separate Tax}} \quad \times \quad \text{Joint Tax Liability Reported on Return}$$

---

[2] Gray's appeal addresses only this narrow issue. We neither approve nor disapprove any other aspect of Revenue Ruling 2004-74.

The hypothetical "spouse's separate tax" in this formula is the tax the spouse would have owed had she filed a separate return, rather than a joint return.

Because Texas is a community property state, the district court assumed in its calculations that if Gray had filed separate tax returns for the relevant tax years, she would have had to pay taxes on fifty percent of the community's income in each year. This hypothetical assumption is consistent with firmly established legal precedent: "Under the laws of Texas each spouse has a vested interest and is owner of half of the community property and is therefore liable for federal income taxes on such a share. There is therefore the obligation, not merely the right, to report half the community income." Bowling v. United States, 510 F.2d 112, 113 (5th Cir. 1975) (citations and internal quotation marks omitted). Nevertheless, Gray argues that the court erred in calculating her hypothetical separate tax liability based on fifty percent of community income. Relying on Ragan v. Commissioner, 135 F.3d 329 (5th Cir. 1998), and Reed v. Lummus (In re Lummus), 90 A.F.T.R.2d 2002-5440 (Bankr. N.D. Tex. Nov. 21, 2000), Gray asserts that the court should instead have calculated her separate tax liability based only on the income she personally received.

Ragan provides no support for Gray's position. In that case, Jackie and David Ragan filed a joint return for the 1980 tax year. 135 F.2d at 331. All of the income reported on the return derived from Mr. Ragan's employment. Id. After Mr. Ragan filed for bankruptcy, the trustee of his bankruptcy estate asserted a claim against the IRS for approximately $109,000, the full amount of the refund Mr. and Mrs. Ragan sought for 1980; after litigation, the IRS paid the claim. Id. at 332. Mrs. Ragan subsequently filed a claim against the IRS in the United States Tax Court for fifty percent of the refund the IRS had paid to the bankruptcy trustee. Id. The tax court held that Mrs. Ragan was not entitled to any portion of the refund. Id.

On appeal, we affirmed the tax court's decision, noting that "the 1980 refund derived solely from the excess withholding of [Mr. Ragan's] personal

earnings." Id. at 333. Applying the rule that "overpayments by married couples are apportionable to each spouse to the extent that he or she contributed to the overpaid amount," we held that this fact foreclosed Mrs. Ragan's claim. Id. (citation and internal quotation marks omitted). Because Mr. Ragan's personal earnings comprised all of the couple's income during the relevant tax year, however, Ragan did not require resolution of the question presently before the court—how to calculate an innocent spouse's share of a joint tax liability for a tax year in which both spouses have income. Ragan thus has no bearing on the proper resolution of Gray's appeal.

Lummus, however, does provide some support for Gray's position. After Lucky Lummus filed for bankruptcy, the trustee of his bankruptcy estate filed an adversary proceeding against him and his wife, Teresa Lummus, seeking turnover of a refund check they had received for the 1998 tax year. 90 A.F.T.R.2d at 2002-5440. In calculating Mrs. Lummus's interest in the refund, the bankruptcy court relied on Ragan for the proposition that her share of the couple's joint tax liability was directly proportional to her personal earnings:

> The [Lummuses'] tax liability for 1998 was $5,534.00. As Mrs. Lummus' earnings accounted for 84.68% of the total earnings, she was responsible for 84.68% of the total taxes owed for 1998, or approximately $4,686.00, while the Debtor was responsible for the remaining 15.32% of the taxes owed, or approximately $848.00.

Id. at 2002-5441. This analysis, however, is unsupported by Ragan and inconsistent with Bowling's holding that a spouse domiciled in Texas has "the obligation, not merely the right, to report half the community income." 510 F.2d at 113. The district court's analysis in the present case, by contrast, is consistent with our precedent and Revenue Ruling 2004-74. We therefore hold that the district court did not err in calculating Gray's share of her and her husband's joint tax liability.

## IV. Conclusion

For the reasons set forth above, we AFFIRM the judgment of the district court.